# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

SHIRLEY SHAWE,

     Plaintiff,

     v.

TRANSPERFECT GLOBAL, INC.,

     Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 2017-0306-AGB

## ORDER DENYING APPLICATION
## FOR INTERLOCUTORY APPEAL

WHEREAS:

A.     This action is the latest installment in a long-running dispute between the co-founders of TransPerfect Global, Inc. ("TPG" or the "Company"): Elizabeth Elting and Philip Shawe ("Shawe"). Elting owns fifty shares of TPG. Shawe and his mother, Shirley Shawe ("Ms. Shawe"), together own the remaining fifty outstanding shares of TPG, with Ms. Shawe owning one share.

B.     On August 13, 2015, the Court granted Elting's petition to appoint a custodian ("the Custodian") to sell TPG under 8 *Del. C.* § 226 in order to remedy the dysfunction in the co-founders' management of the Company and the deadlocks at the board and stockholder level that were proven at trial.[1]

---

[1] *See In re Shawe & Elting LLC*, 2015 WL 4874733 (Del. Ch. Aug. 13, 2015).

1

C.      On June 21, 2016, the Court accepted, with certain modifications, the Custodian's recommendation for a proposed plan of sale for the Company.[2]  An implementing order was entered on July 18, 2016 (the "Sale Order").  On February 13, 2017, the Supreme Court affirmed the post-trial decision and the Sale Order.[3]

D.      On March 12 and April 18, 2017, Ms. Shawe made two different proposals that contemplated providing Elting with a proxy to vote Ms. Shawe's single share of TPG to elect directors of the Company as part of a purported effort to break the stockholder deadlock at TPG.  Both proposals, however, were subject to various conditions involving changes to the governance and/or capital structure of TPG.[4]

E.      On April 20, 2017, after Elting had rejected both proposals, Ms. Shawe filed this action, asserting a single claim under 8 *Del. C.* § 211(c) to compel TPG to hold an annual meeting of its stockholders (the "Section 211 Action").  Simultaneous with filing her complaint, Ms. Shawe filed a motion for expedited proceedings.  As part of her Section 211 Action, Ms. Shawe sought highly unusual relief, namely entry of an order to change the Company's capital structure by requiring it to issue

---

[2] *In re TransPerfect Global, Inc.*, 2016 WL 3477217 (Del. Ch. June 21, 2016).

[3] *Shawe v. Elting*, 157 A.3d 152 (Del. 2017).

[4] *In re TransPerfect Global, Inc.*, 2017 WL 3499921, at *2 (Del. Ch. Aug. 4, 2017).

the remaining authorized, but unissued, shares of the Company's stock pro rata to the current stockholders before the annual meeting.[5]

F.    On April 25, 2017, Elting filed a motion to enforce the Sale Order and for sanctions in C.A. Nos. 9700-CB and 10449-CB.

G.    On April 26, 2017, the Custodian filed a letter in response to the filing of the Section 211 Action and Elting's motion, expressing his belief that Ms. Shawe's proposal was inconsistent with the Sale Order and seemed to be futile, and that convening a stockholders' meeting now may inject uncertainty into the sale process given "the Shawes' prior conduct and stated intent to upend the sale process."[6]

H.    On June 2, 2017, at the conclusion of a hearing on the outstanding motions, the Court ordered the parties to engage in mediation with former Chancellor Chandler.

I.    On August 4, 2017, after the mediation reached an impasse, the Court issued a letter decision granting Elting's motion to enforce the Sale Order, denying Elting's motion for sanctions, and denying Ms. Shawe's motion to expedite (the "August 4 Ruling").[7]  In the letter decision, I found, among other things, that:

---

[5] *Id.* at *3.

[6] Dkt. # 983 (No. 9700–CB).

[7] *In re TransPerfect Global, Inc.*, 2017 WL 3499921, at *6.

3

(a) the "clear and admitted objective of the Section 211 Action is to remove the Custodian and to end the sale process, which is inconsistent with the Sale Order's directive to cooperate fully with the Custodian and to not impede or undermine, or intend to impede or undermine, the sale process;"

(b) ordering a stockholders' meeting "would be a futile exercise" in any event, particularly given Ms. Shawe's insistence on conditioning her grant of a proxy on the implementation of changes to the Company's governance and/or capital structure that Elting already had rejected; and

(c) convening a stockholders' meeting at this juncture could jeopardize the sale process, which is expected to conclude in the near future.[8]

Based on these findings, I concluded that TPG did not need to respond to the Section 211 Action at that time.

J.      On August 14, 2017, Ms. Shawe applied for an interlocutory appeal of the part of the August 4 Ruling denying her motion to expedite the Section 211 Action. Ms. Shawe has not sought to appeal the part of the August 4 Ruling granting Elting's motion to enforce the Sale Order. On August 24, 2017, the Company and Elting each filed papers opposing the application for an interlocutory appeal.[9]

---

[8] *Id.* at *4 (internal quotations omitted).

[9] Dkt. # 1018 (No. 9700-CB).

NOW THEREFORE, the Court having considered the parties' submissions,

IT IS HEREBY ORDERED, this 5th day of September, 2017, as follows:

1.      Supreme Court Rule 42(b)(i) provides that an interlocutory appeal will not be certified "unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[10]   In deciding whether to certify an interlocutory appeal, the trial court should examine the applicability of eight criteria enumerated in Supreme Court Rule 42(b)(iii).

2.      "Interlocutory appeals should be exceptional, not routine, because they disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[11]   As a result, the trial court must assess "the most efficient and just schedule to resolve the case," and then "identify whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice.  If the balance is uncertain, the trial court should refuse to certify the interlocutory appeal."[12]

3.      The August 4 Ruling did not decide a substantial issue of material importance in my opinion because, as explained further below, it was simply the logical consequence of enforcing the Sale Order, which was entered after an

---

[10] Del. S. Ct. Rule 42(b)(i).

[11] Del. S. Ct. Rule 42(b)(ii).

[12] Del. S. Ct. Rule 42(b)(iii).

extensive trial and affirmed on appeal. Even if it did, the most efficient and just schedule to consider an appeal of the August 4 Ruling would be to do so in tandem with appellate review of the outcome of the sale process if either of the Shawes elects to pursue that course after the sale process has concluded.

4. As noted above, the sale process is expected to conclude in the near future. Assuming the process results in a proposed transaction to sell the Company, which is expected but not assured, consummation of any such transaction would be subject to the approval of the Court of Chancery and then to appellate review under the express terms of the Sale Order.[13] Depending on the outcome of the process, there may never be a need to review the August 4 Ruling or for any further proceedings in the Section 211 Action. This could occur, for example, if the Shawes are content with the form of a final transaction, such as one in which they prevail (by themselves or as part of a group) as the highest bidder to acquire the Company.

5. Apart from the fact that completion of the sale process may moot the need for appellate review of the August 4 Ruling, three other factors counsel in favor of waiting until the conclusion of the sale process to consider an appeal of the August 4 Ruling.

6. First, the scheduling of a stockholders' meeting at this time would be inconsistent with the Sale Order, which provides, in relevant part, that "the

---

[13] Sale Order ¶ 18 (Dkt # 848, C.A. No. 9700-CB).

stockholders [of TPG] shall … comply with the Order and … cooperate fully with the Custodian in the performance of his duties under the Order," which is to "undertake the Modified Auction … in an effort to sell the Company," and that the stockholders shall not take "any action which impedes or undermines, or intends to impede or undermine, the sale process."[14]

7.      Contrary to the impression Ms. Shawe's application attempts to convey, she actively participated in the proceedings that led to entry of the Sale Order.[15]  Ms. Shawe also had every opportunity over many years leading up to the trial and the entry of the Sale Order to attempt to break the stockholder deadlock over the election of directors.  She never attempted to do so and, to the contrary, she stipulated before trial that the stockholders of TPG "were so divided that they failed to fill the vacancy on the Board [of TPG] and they failed to elect successors to directors whose terms have expired (*i.e.*, Shawe and Elting)."[16]  In essence, Ms. Shawe is seeking through her Section 211 Action to impede the implementation of the Sale Order after she and her son lost at trial and on appeal.  Denial of the motion to expedite, therefore, was simply the logical consequence of enforcing the Sale

---

[14] Sale Order ¶¶ 1, 12 (Dkt # 848, C.A. No. 9700-CB).

[15] *See Shawe v. Elting*, 2015 WL 5167835 (Sept. 2, 2015) (documenting Ms. Shawe's active participation "in every phase of the litigation of the four related actions for over one year" before the August 2015 post-trial decision was issued).

[16] Stipulation and Order ¶ 1 (Dkt. # 12, 10141-CB).

7

Order. Notably, Ms. Shawe's application does not dispute the finding in the August 4 Ruling that her Section 211 Action is inconsistent with the Sale Order, and she did not seek interlocutory appeal of the Court's decision to grant Elting's motion to enforce the Sale Order.

8. Second, even if holding a stockholders' meeting at this time were not inconsistent with the Sale Order, it would be an exercise in futility to hold such a meeting in any event. In particular, given that Ms. Shawe consistently conditioned her willingness to grant Elting a proxy on the implementation of significant changes to the governance and/or capital structure of the Company that were unacceptable to Elting, it is clear, as found in the August 4 Ruling, that "no proxy would be granted, no deadlock would be broken, and no director would be elected."[17] Ms. Shawe's application also does not dispute this specific finding.

9. Third, scheduling a stockholders' meeting may jeopardize the sale process. The Custodian, who has become intimately familiar with the Company's management and the stockholders' actions and motivations over the past two years during which he has served as a third, independent tie-breaking director on the TPG board, explained his concerns along these lines, as follows:

> I also am concerned that convening an annual stockholders' meeting in the midst of the sale process only risks injecting more uncertainty into the overall process. Given the Shawes' prior conduct and stated intent to upend the sale process, I am cautious that the proposed stockholders'

---

[17] *In re TransPerfect Global, Inc.*, 2017 WL 3499921, at *5.

meeting—which serves no purpose given Ms. Elting's declination to effectively [undo] the Sale Order—might represent just another avenue for delay and distraction.[18]

10.     Ms. Shawe argues that the August 4 Ruling conflicts "with established Delaware law" and would render "the stockholder protections granted by Section 211 illusory."[19]  To be sure, it is customary for the Court of Chancery to exercise its discretion in favor of promptly scheduling an annual meeting of stockholders when the statutory requirements of Section 211 have been satisfied.  But the statute does not mandate that result and here, unlike any of the cases cited in Ms. Shawe's application,[20] the circumstances discussed above make such relief inappropriate. Ms. Shawe, moreover, will suffer no prejudice by having to wait a brief period until the sale process concludes in order to pursue appellate recourse with respect to the August 4 Ruling, if that becomes necessary.

11.     Ms. Shawe next argues that the Court's denial of her motion to expedite violates her due process rights because her claim was functionally dismissed without

---

[18] Dkt. # 983 (No. 9700–CB).

[19] Mot. for Application for Certification of an Interlocutory Appeal at 5 (Dkt. # 21, No. 2017-306-CB).

[20] Ms. Shawe's application primarily relies on two decisions of this Court involving the scheduling of stockholder meetings under Section 211:  *Newcastle P'rs v. Vesta Ins. Grp., Inc.*, 887 A.2d 975, 979 (Del Ch. 2005), and *Rich v. Fuqi Int'l*, 2012 WL 5392162, at *3 (Del. Ch. Nov. 5, 2012).  Neither case involved a corporation that was in the midst of a court-ordered sale process or a situation where the holding of a stockholder meeting would be futile.

a hearing on the merits. This argument fails in my view. Ms. Shawe was afforded the opportunity to submit papers and to present argument on her motion to expedite, and the outcome of that ruling merely defers further proceedings in the Section 211 Action while the sale process reaches its near-term conclusion. With regard to the sale process itself, the ordering of which plainly is Ms. Shawe's real grievance, Ms. Shawe indisputably was afforded due process—at trial and on appeal—in connection with the proceedings that led to the entry of the Sale Order. The prospect that the completion of the sale process may moot Ms. Shawe's Section 211 claim as the logical result of enforcing the Sale Order does not make for a constitutional violation.

12.    Finally, Ms. Shawe argues that interlocutory review would serve considerations of justice. I disagree. For the reasons discussed above and more thoroughly in the August 4 Ruling, considerations of justice strongly weigh in favor of completing the sale process, bringing this over three-year old litigation to a conclusion in the trial court, and then affording all parties the opportunity to pursue appellate recourse in a single proceeding rather than piecemeal upon conclusion of the sale process.

13.    For the reasons explained above, Ms. Shawe's application for certification of an interlocutory appeal is denied.

10

pursue appellate recourse in a single proceeding rather than piecemeal upon conclusion of the sale process.

13. For the reasons explained above, Ms. Shawe's application for certification of an interlocutory appeal is denied.

_____
Chancellor

11