**NEWCASTLE PARTNERS, L.P., Plaintiff,**

v.

**VESTA INSURANCE GROUP, INC., a Delaware corporation, Defendant.**

**C.A. No. 1485–N.**

Court of Chancery of Delaware, New Castle County.

Submitted: Nov. 14, 2005.
Decided: Nov. 15, 2005.

---

Bruce L. Silverstein, Melanie K. Sharp, Martin S. Lessner, Christian Douglas Wright, Young Conaway Stargatt & Taylor, L.L.P., Wilmington, DE; Steven Wolosky, Olshan Grundman Frome Rosenzweig & Wolosky, L.L.P., New York City, for the Plaintiff.

J. Travis Laster, Abrams & Laster, L.L.P., Wilmington, DE; James F. Hughey, Jr., Balch & Bingham, L.L.P., Birmingham, AL, for the Defendant.

## *OPINION AND ORDER*

LAMB, Vice Chancellor.

Vesta Insurance Group, Inc. has not held a meeting for the purpose of electing directors since June 2004. It has also not published its annual report or certified financial statements for the year ended December 31, 2004. On July 7, 2005, Newcastle Partners, L.P., a large stockholder of Vesta, brought suit under 8 *Del. C.* § 211 seeking an order compelling Vesta to hold an annual meeting for the election of directors. At the conclusion of trial on August 19, 2005, the court rendered its oral decision, directing that Vesta hold its annual meeting within 90 days, or no later than November 17, 2005. The court allowed such an exceptionally long period of delay only because Vesta's trial evidence strongly suggested that it would be able to complete its 2004 financial reports by Sep-

tember 30 and, thus, would be able to make the necessary SEC filings to permit management to solicit proxies at the mandated meeting.

Although it is now six weeks after the date Vesta's trial witnesses confidently predicted for completion of the 2004 financial statements, that task remains incomplete. Seeking to further delay its 2005 annual meeting, Vesta now moves for relief from this court's Order, under Court of Chancery Rule 60(b), and for an interim stay of that judgment pursuant to Court of Chancery Rule 62(b). Fundamentally, Vesta's claim for relief rests on a supposed conflict between this court's Order issued pursuant to the clear mandate of Section 211(c) of the Delaware General Corporation Law and SEC proxy rules that, in normal circumstances, prohibit registered companies from convening annual meetings for the purpose of electing directors without first disseminating an annual report and either a proxy statement or an information statement. Because Vesta has not and cannot show a basis for relief from this court's judgment, its motion is denied.

## I.

By Order and Final Judgment entered on September 1, 2005, the court directed Vesta, a Delaware corporation, to hold its 2005 annual meeting of stockholders no later than November 17, 2005. The court's Order further provided, as contemplated by Section 211(c), that the shares of Vesta stock represented at the annual meeting, either in person or by proxy, and entitled to vote thereat would constitute a quorum for the purpose of that meeting, notwithstanding any contrary provision found in Vesta's certificate of incorporation or by-laws.

The decision to allow Vesta 90 days to hold its meeting, rather than the usual

period of 30 to 45 days, reached what the court regarded as the outer bounds of its discretion. The court agreed to such an extended delay only because Vesta's trial witnesses confidently predicted, with what appeared to be a reasonable basis in fact, that the process of finalizing Vesta's 2004 financial statements (and restating earlier ones) would be complete by September 30, 2005. If the task could be accomplished by that date, the court reasoned, Vesta would be able to disseminate its 2004 annual report and year-end financial statements in advance of the mandated meeting date. Recognizing that, if it could be done within an acceptable time frame, it was desirable that stockholders have that information in hand in advance of the meeting, the court set the meeting date at the outer limit of the possible dates.

Vesta's confident predictions of a September 30 completion have proven to be wrong. In fact, the company's auditors, PriceWaterhouseCoopers LLC ("PWC"), still have not finished their review of Vesta's 2004 financial statements. And, although Vesta's President and CEO now *hopes* that PWC can finish its work by December 31, 2005, he is unable to offer any assurances to that effect, stating that Vesta "cannot predict when [the 2004 financial statements] will be complete."[1] In its motion, Vesta argues that it should be relieved of its obligation to hold its 2004 annual meeting ordered by this court until those financial statements are ready because, it claims, it will otherwise be placed in jeopardy of violating the federal securities laws. Its principal argument in support of this position is that members of the staff of the United States Securities and Exchange Commission have suggested to Vesta's lawyers, on at least two occasions, that it cannot hold the meeting in compli-

ance with this court's Order without violating the SEC's proxy rules.

The first such communication came in a letter received on November 9, 2005, in which an examiner in the SEC Division of Corporate Finance requested clarification of Vesta's plans in light of SEC rules on proxy solicitations and information statements. Thereafter, in a telephone conversation another Corporation Finance staff member, presumably senior in status to the examiner, recommended that Vesta "not proceed with the meeting without compliance with the proxy rules."[2] According to the affidavit of its counsel submitted by Vesta, this advice was preceded by the following statement:

> He stated that the staff had seen similar situations in the past, but that the staff had never dealt with a situation where ultimately a company required by court order to hold a meeting was not also able to distribute a proxy statement in compliance with the proxy rules. He stated that the staff did not want to be in a position to decide what position it would have to take if, in fact, Vesta held its meeting without compliance with the proxy rules.

Vesta argues that these ambiguous communications from members of the SEC staff leave Vesta in the uncomfortable position of having to disobey either this court or the SEC. Vesta therefore requests relief from the court's prior judgment, seeking to have the deadline before which it must hold its annual meeting delayed indefinitely.

The plaintiff, Newcastle Partners, L.P., opposes Vesta's attempt to delay the annual meeting, arguing that none of the facts presented by the defendant would prevent the planned annual meeting from going

---

**1.** Gayle Aff. ¶ 4.

**2.** Waters Aff. ¶ 7.

forward as required on November 17, 2005. Rather, the plaintiff argues, the defendant's motion is an attempt to circumvent the court's September 1, 2005 Order, leaving shareholders with no definite date for Vesta's already overdue annual meeting.

Vesta seeks reconsideration on the basis of Court of Chancery Rules 60(b) and 62(b). Rule 60(b) permits a party to seek relief from a final judgment or order, based on six enumerated grounds.[3] The two on which the defendant relies in this case are those that allow relief for "newly discovered evidence," and for "any other reason justifying relief from the operation of the judgment." Under Court of Chancery Rule 62(b), the court may in its discretion stay the execution of any order pending the disposition of a motion for relief from a judgment pursuant to Rule 60.

## II.

■ The shareholder meeting to elect directors is a cornerstone of Delaware corporate law. Therefore, the Delaware courts have repeatedly recognized that the policy justifications behind 8 *Del. C.* § 211 are so strong that if the statutory elements required to compel a shareholder's meeting are shown, the right to relief is "virtually absolute."[4] In this case, the defendants conceded that no annual meeting had been held since June 1, 2004, exceeding the maximum 13–month period between meetings allowed by statute. Vesta having failed to prove any possible ground for denying the relief sought by Newcastle Partners, the court summarily ordered Vesta to hold its 2005 annual meeting. In requiring that the meeting be held no later than November 17, 2005, the court exercised the full measure of its discretion to grant the company additional time to complete preparations for that meeting. As already discussed, the court relied on the testimony of Vesta's witnesses suggesting that it would be ready to distribute updated financial information to its stockholders in time for a November 17 meeting.[5]

As the court recognized at the time of trial, Vesta could not, of its own volition, convene a meeting at this time in conformity with SEC proxy regulations. This is because the prior dissemination of an annual report is required to solicit proxies under Rule 14a–3;[6] moreover, both an annual report and an information statement are required to be furnished to

---

**3.** Rule 60(b) contemplates relief in the following circumstances: "On motion and upon such terms as are just, the Court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

**4.** *Speiser v. Baker,* 525 A.2d 1001 (Del.Ch. 1987).

**5.** The court noted in its previous oral decision that it was "not aware of any authority in this Court that has allowed or ordered setting of a meeting more than 90 days post [judgment]." *See Walsh v. Search Exploration Inc.,* 1990 WL 126664, 1990 Del. Ch. Lexis 132 (Del.Ch. Aug. 31, 1990) (setting a period of 90 days after judgment); *Hecco Ventures v. Texas American Energy Corp.,* 1986 WL 7535, 1986 Del. Ch. Lexis 435 (Del.Ch. July 7, 1986) (approximately two months); *Shay v. Morlan Int'l, Inc.,* 1983 WL 21108, 1983 Del. Ch. Lexis 405 (Del.Ch. July 29, 1983) (70 days).

**6.** 17 C.F.R. § 240.14a–3.

stockholders pursuant to Rules 14c–2 and 14c–3,[7] where the registrant plans to hold an annual meeting to elect directors but does not intend to solicit proxies.

Vesta's reading of its communications with the SEC, however, is entirely too strong. The cited letter does not order Vesta to stop the annual meeting, or to take any other action inconsistent with this court's Order.[8] Rather, it merely asks for further explanation of how precisely Vesta's proposed action fits into the structure of the SEC regulations. Apparently, that request was not answered in writing. Similarly, the telephonic communication discussed above neither threatened enforcement action against Vesta nor even suggested that the responsible SEC staff have formulated a view that compliance with this court's Order could violate any SEC rules. Obviously, this communication falls far short of a definitive interpretation of the SEC rules.

It is also unlikely that the SEC would ever undertake to stop an annual meeting of stockholders ordered by this court, because to do so would cut directly against the policy of a strong stockholder franchise that underlies the SEC's rules on the distribution of proxy and information statements. A brief history of the proxy rules illustrates the point. For the first forty years after the enactment of the Securities Exchange Act of 1934, the contemporary equivalent of Rule 14a–3 was the only provision that required companies to provide information to stockholders in connection with shareholder meetings. But just as today, Rule 14a–3 only required the company to provide information when it was actively soliciting proxies. When a company did not solicit proxies in connection with a shareholder meeting, the company had no duty at all under federal law to send notice of the meeting to shareholders. This dichotomy between the company's duties when it chose to solicit proxies and when it did not inevitably gave companies keen to save themselves the expense or potentially embarrassing disclosures of a proxy statement a strong incentive to proceed without soliciting proxies. As early as 1939, in fact, observers began to notice the results of the perverse incentives created by the existence of what is now Rule 14a–3. As one academic commentator noted:

> [I]t is understood that from October 1, 1938 to April 1, 1939, approximately 70 corporations whose securities are listed on the New York Stock Exchange out of approximately 775 such corporations adopted the policy of not soliciting proxies from their stockholders in connection with annual meetings. Under the former proxy rules of the Commission it is understood that only 12 out of approximately 775 such corporations did not solicit proxies.[9]

The effects that the circumvention of the proxy regulations had on shareholders and on corporate governance were significant. Presented with the possibility of governing the corporation without soliciting proxies, directors saw a method to govern without accountability. A study of the Glidden corporation in 1950 demonstrates the danger: by simply refusing to solicit proxies, the Glidden directors made sure that no quorum was present at their annual meeting. Unable to elect new directors, then, the company determined that "the directors and officers must hold over until their successors are elected and qualified,"

---

7. 17 C.F.R. §§ 240.14c–2 and 14c–3.

8. Def.'s Mot. For Relief from J. Ex. C.

9. Arthur H. Dean, *Non–Compliance with Proxy Regulations*, 24 Cornell L.Q. 483, 487 n. 8 (1939).

leaving the shareholders with almost no way to exercise their franchise.[10] As evident as the problem was to observers, however, the academic consensus in 1950 was that the Commission lacked the power to solve the problem with the tools at hand.[11] In 1964, Congress responded to the SEC's lack of authority by enacting Section 14(c), requiring substantially the same filings for meetings at which no proxies are be solicited as the SEC then required for solicitations.[12]

 This history suggests that the purpose of Section 14(c) and the rules promulgated thereunder is to prevent registrants from avoiding their disclosure obligations by the simple expedient of declining to solicit proxies in connection with any meeting of stockholders. This is consistent with Congress's original purpose in including proxy regulation in the 1934 Act that "management of properties owned by the investing public should not be permitted to perpetuate themselves by the misuse of corporate proxies."[13] Nothing in either that statute or regulation suggests any purpose to interfere with the power of state courts to require that stockholder meetings be held in accordance with the requirements of state corporation law in situations where the registrant corporation is delinquent in its SEC filing obligations and, thus, is unable to comply with the literal terms of the SEC proxy rules.[14] Indeed, the fact that neither party in this case can point the court to authority that has raised the potential conflict between Section 211 or similar provisions under other state corporation statutes and Section 14(c), or the rules thereunder, in some 40 years of coexistence is strong evidence that the two provisions do not actually conflict. Rather, they both serve the same purpose of helping to safeguard the shareholders' foundational voting rights.

The basic compatibility between the state and federal laws is especially evident in this case. None of Vesta's shareholders have had the opportunity to vote their shares in 18 months, and Vesta cannot provide reliable guidance on when the audited financial statements required to prepare an annual report may become available. Few circumstances could be more consistent with the federal law's purpose of protecting the shareholders' franchise than this court's Order directing that Vesta's shareholders be allowed to vote and, if they choose, to replace one or more of the directors standing for reelection.

 The court also notes that its Order is consistent with the important policies underlying the internal affairs doctrine that the power of the state of incorporation to mandate stockholder meetings in appropriate circumstances not be lightly overturned. As the Delaware Supreme Court has recently explained, the internal affairs doctrine is the basic understanding that "only the law of the state of incorporation governs and determines issues relating to a

**10.** David C. Bayne, *Around and Beyond the SEC*, 26 Ind. L.J. 207, 212 (1950).

**11.** *Id.* at 211, *citing* Daniel M. Friedman, *SEC Regulation of Corporate Proxies*, 63 Harv. L.Rev. 796, 819 (1950).

**12.** Louis Loss & Joel Seligman, Securities Regulations, § 6–C–7 (1989).

**13.** Dean, *supra* note 9, at 485, *citing* H.R. Rep. No. 1383 (1934).

**14.** Indeed, the SEC sometimes uses its discretion to issue orders exempting companies from the requirements of that section when the protection of public shareholders is not as keenly at stake as in cases of potential entrenchment. Loss & Seligman, *supra* note 12.

corporation's internal affairs."[15] The doctrine is rooted not only in the decisions of the United States Supreme Court,[16] but also in the Fourteenth Amendment's implicit guarantee of the stockholders' right to "know to what standards of accountability they may hold those managing the corporation's business and affairs."[17] There are, of course, some circumstances in which a state's governance of internal corporate affairs is preempted by federal law, but those instances are rare, and occur only when the law of the state of incorporation is "inconsistent with a national policy on foreign or interstate commerce."[18]

The issue presented in this case, in its most simple form, is whether a shareholder meeting will happen on November 17, 2005, or will be indefinitely delayed. This determination is paradigmatically within the internal affairs doctrine as explained by the courts of this state and of the United States.[19] Any suggestion that there is an irreconcilable conflict between the mandate of this court's Order and Final Judgment and SEC statutes and regulations would both misconstrue the scheme of federal proxy regulation and weaken a basic premise of American corporate law

that is a defining characteristic of our federal system.[20]

For all the foregoing reasons, the court concludes that Vesta has shown no basis for relief under Court of Chancery Rule 60(b). The plaintiff has a clear right under Delaware law to convene an annual meeting. The fact that the reason Vesta delayed in calling its 2005 meeting was its inability to complete its 2004 financial statements does not diminish the right of Vesta stockholders to meet for the purpose of choosing directors.

### III.

For the foregoing reasons, the defendant's motion for relief under Court of Chancery Rules 60(b) and 62(b) is DENIED. IT IS SO ORDERED.

15. *Vantagepoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1113 (Del.2005).

16. *Examen, Inc. v. VantagePoint Venture Partners 1996*, 873 A.2d 318 (Del.Ch.2005), *citing CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987); *Edgar v. MITE Corp.*, 457 U.S. 624, 645, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982).

17. *Vantagepoint*, 871 A.2d at 1113, *citing McDermott, Inc. v. Lewis*, 531 A.2d 206, 214 (Del.1987).

18. *Vantagepoint*, 871 A.2d at 1113.

19. *McDermott*, 531 A.2d at 215 ("[T]he [internal affairs] doctrine governs the choice of law determinations involving matters *peculiar* to corporations, that is, those activities concerning the relationships *inter se* of the corporation, its directors, officers, and shareholders.").

20. Frederick Tung, *Origins of the Internal Affairs Doctrine* (2005) http://papers.ssrn .com/sol3/papers .cfm?abstract—id =686592 (tracing the history of the internal affairs doctrine, and attempting to explain why states uniformly maintained the doctrine even though it is facially a limitation on their own power over corporations doing business within their borders but which are domiciled elsewhere.).