# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT G. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2018-0687-MTZ |
| | ) | |
| LORRENCE T. KELLAR, | ) | |
| CHRISTIAAN M. OLIVIER, | ) | |
| ARTHUR B. DROGUE, JACK W. | ) | |
| PARTRIDGE, and R. ERIC | ) | |
| MCCARTHEY, | ) | |
| | ) | |
| Defendants. | ) | |

Date Submitted: December 19, 2018
Date Decided: December 21, 2018

David J. Teklits and Elizabeth A. Mullin, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; *Attorneys for Plaintiff Robert G. Brown*

Michael F. Bonkowski, Nicholas J. Brannick, and Bradley P. Lehman, COLE SCHOTZ, P.C., Wilmington, Delaware; *Attorneys for Defendants Lorrence T. Kellar, Christiaan M. Olivier, Arthur B. Drogue, Jack W. Partridge, and R. Eric McCarthey*

**ZURN, Vice Chancellor**

Plaintiff Robert G. Brown, a stockholder of SPAR Group, Inc. ("SGRP"), brought this dispute to determine the composition of SGRP's board of directors (the "Board") under 8 *Del. C.* § 225 (the "225 Action"). This opinion addresses (i) Brown's November 14, 2018, Motion for Summary Judgment (the "Motion for Summary Judgment"),[1] and (ii) SGRP's December 13, 2018, Motion to Supplement the Summary Judgment Record (the "Motion to Supplement").[2] The 225 Action is on a dual track with an earlier action by SGRP against majority stockholders Brown and William H. Bartels for declaratory judgment, conspiracy, and breach of fiduciary duties (the "Bylaw Action").[3] The Bylaw Action seeks injunctive relief to prevent the majority stockholders' alleged entrenchment. The actions are scheduled for consecutive expedited trials in January 2019, with a status quo order binding the parties in the interim. The parties are currently engaged in discovery.

In the 225 Action, Brown seeks a determination that certain written consents he and Bartels delivered to the Board in July 2018 removed incumbent director Lorrence T. Kellar and replaced him with non-party Jeffrey Mayer. Brown's Motion for Summary Judgment asserts that the written consents were technically valid and

---

[1] This decision refers to the parties' briefing on the Motion for Summary Judgment as the "Opening Br.," "Answering Br.," and "Reply Br."

[2] This decision refers to the parties' briefing on the Motion to Supplement as the "Mot. to Supp.," "Opp. to Mot. to Supp.," and "Reply to Mot. to Supp."

[3] C.A. No. 2018-0650-MTZ.

2

effective upon delivery, and that, as a matter of law, the Court cannot expand its scope of review in the summary 225 Action to consider extraneous inequitable conduct alleged to void the written consents.

The defendants in the 225 Action are all incumbent Board members (the "Director Defendants").[4] They contend Brown's Motion for Summary Judgment must be denied so that the Court can consider their defense rooted in Brown's and Bartels' alleged inequitable conduct. The Director Defendants also assert that the written consents are not yet effective because SGRP did not send the prompt notice to stockholders as required under 8 *Del. C.* § 228(e) and Rule 14c-2 of the Securities Exchange Act of 1934. Finally, the Director Defendants moved to supplement the summary judgment record with a May 2018 email from Brown that purportedly "conceded the point" that notice is impracticable.[5]

The Motion to Supplement is granted, but the subject materials do not affect my analysis on the Motion for Summary Judgment, which is granted in part and denied in part without prejudice to any of Brown's claims. The 225 Action will proceed to trial. Section 225 actions are narrow, summary proceedings to determine

---

[4] SGRP is plaintiff in the Bylaw Action and the Director Defendants are defendants in the 225 Action, but the two groups have related interests and retained the same counsel. Accordingly, I refer to both SGRP and the Director Defendants loosely as the "SGRP Parties" when they act together.

[5] Mot. to Supp. at ¶ 11.

the *in rem* status of board and officer seats. At the same time, the Court must review cognizable claims, including potential breaches of fiduciary duty, to the extent they bear on the proper composition of the disputed offices. The Director Defendants assert such claims and are entitled to develop them through trial. While I intend to determine the 225 Action with a tailored analysis befitting its summary nature and scope, I cannot wholly exclude, at this time and on an undeveloped record, the Director Defendants' defense that alleged breaches of fiduciary duty nullify the written consents and bear on the composition of the Board.

As for the written consents, I find that they were technically effective under Section 228 upon their delivery on July 5, 2018, notwithstanding the Section 225 issues, referenced above, that will be addressed at trial. SGRP cannot nullify otherwise effective written consents by unilaterally withholding notice of those acts. Nor can SGRP justify withholding that notice by pointing to perceived conflicts between SEC Rules and Delaware law.

## I. BACKGROUND

The 225 Action and the Bylaw Action involve a series of purported corporate acts from the summer of 2018. The parties dispute the impact of those acts on SGRP and the current composition of its Board. I draw the background below from the parties' complaints and the uncontested facts from the briefing.

## A. The Parties

SGRP is a Delaware merchandising and marketing services company based out of New York and Michigan.[6] As of June 29, 2018, the members of SGRP's Board were Bartels, Peter W. Brown, Christiaan M. Olivier, Arthur B. Drogue, Jack W. Partridge, Kellar, and R. Eric McCarthey.[7] SGRP's governance committee determined that Drogue, Partridge, McCarthey, and Kellar are independent directors.[8]

Brown, Bartels, and SGRP have a long history.[9] Brown has held various director and management positions in the company, including his most recent posts as Chairman of the Board and an officer, which he retired from on May 3, 2018.[10] Bartels has been Vice Chairman of the Board and an officer since 1999.[11] Brown

---

[6] Verified Amended Complaint, Bylaw Action, at ¶ 4 (Sep. 21, 2018) (the "Bylaw Complaint").

[7] *Id.* at ¶ 8. Bartels is a defendant to the Bylaw Action. Peter W. Brown is related to defendant Robert G. Brown. *Id.* at ¶ 5. I refer to the defendant Brown generally as "Brown" in this decision. The remaining directors are the Director Defendants.

[8] *Id.* at ¶ 8.

[9] Allegations regarding that history are set forth in the Bylaw Action pleadings. That history is not necessary for this decision. *See id.* at ¶¶ 15-57.

[10] *Id.* at ¶ 5.

[11] *Id.* at ¶ 6.

and Bartels together own a majority of SGRP outstanding stock and it is undisputed that they, at least collectively, are controlling stockholders.[12]

## B.     The Written Consents

On June 29 and July 5, 2018, Brown and Bartels executed written consents that together purported to remove Kellar from the Board and elect non-party Mayer in his place (the "June 29 Consent" and "July 5 Consent," or together, the "Director Consents").[13] Also on July 5, the Board purported to adopt amended and restated bylaws (the "July Bylaws").[14]  Section 3.11 of the July Bylaws imposed a requirement that "a majority of the members of the Board shall be independent directors," but also stated that:

> Notwithstanding any provision of [the Bylaws] or any size of or limited on the number of Board members established in any resolution of the Board or its stockholders to the contrary, the Board size shall be automatically expanded to accommodate each additional independent director needed to satisfy this majority requirement.[15]

---

[12] *Id.* at ¶ 7.

[13] Docket Item ("D.I.") 1 at ¶ 10 (the "225 Complaint").

[14] Bylaw Compl. at ¶ 55.

[15] *Id.*

Brown and Bartels delivered the July 5 Consent at approximately 11:26 a.m., before the Board met to approve the July Bylaws around 3:00 p.m.[16] Brown contends the Director Consents were effective upon delivery of the July 5 Consent.[17]

On July 31, SGRP filed a preliminary information statement (the "Preliminary Statement") with the SEC to disclose the Director Consents. After a ten-day period to allow the SEC to approve or comment, SGRP allegedly would have delivered the Preliminary Statement to stockholders.[18] But, on August 6, Brown and Bartels each filed an amended Schedule 13D with the SEC, recognizing their status as a control group for certain purposes and outlining several proposed bylaw amendments that they intended to adopt by written consent.[19] The SGRP Parties assert that these filings rendered the Preliminary Statement inaccurate and that disclosing it to stockholders would therefore be improper.[20]

---

[16] Opening Br. at 6; Kyle A. Pinder Affidavit, D.I. 35, Ex. A. While initially disputed, the parties have agreed, in light of discovery, that Brown and Bartels delivered the Director Consents before the Board approved the July Bylaws. *See* Opening Br. at 6-8; Answering Br. at 11; Reply Br. at 1 n.1; Arg. Tr. at 12:24-13:18.

[17] 225 Compl. at ¶ 10. The parties appear to agree that the June 29 Consent alone did not represent a sufficient number of shares to effect the corporate action. *See* Bylaw Compl. at Exs. D-E; Answering Br. at 11. The corporate action could only have been effective upon delivery of the July 5 Consent.

[18] Bylaw Compl. at ¶ 69; Reply to Mot. to Supp. at ¶¶ 2, 6.

[19] Bylaw Compl. at Ex. G.

[20] *Id.* at ¶ 69; Answering Br. at 20.

7

On August 8, Brown and Bartels delivered a third written consent (the "August 8 Consent") purporting to enact the changes outlined in their August 6 SEC filings. These included amending the bylaws to provide for supermajority Board approval for certain actions, generally fix the size of the Board unless determined otherwise by the stockholders, require stockholder approval for virtually all future directors, and remove the July Bylaws' requirement of a majority of independent directors.[21] The parties agree that the August 8 Consent did not become effective, if it became effective at all, until a fourth written consent was delivered on September 18 (with the previous consents, the "Written Consents").[22]

## C.    The Litigation

SGRP brought the Bylaw Action on September 4 (as amended on September 21) to challenge aspects of the Written Consents, including through a declaratory judgment and claims for conspiracy and breaches of the duty of loyalty. Brown followed with the 225 Action on September 18, which seeks a ruling under Section 225 to settle the Board's true composition. Both parties sought expedition, which the Court granted on October 2.[23] This case was then assigned to me on October 4.

---

[21] Bylaw Compl. at ¶¶ 66-67.

[22] Opening Br. at 3; Answering Br. at 13-14.

[23] D.I. 21.

In their second affirmative defense to Brown's Section 225 complaint, the Director Defendants assert:

> As is more fully set forth in SGRP's Verified Amended Complaint [Transaction ID No. 62479682] in the [Bylaw Action], Plaintiff's purported removal of Mr. Kellar and appointment of Mr. Mayer to the Board of SGRP are part of a larger, grossly inequitable scheme by Plaintiff and his co-controlling shareholder to improperly divert SGRP's resources to their own purposes and for their sole benefit, in violation of their fiduciary duties to SGRP and to its minority shareholders. Regardless of whether Plaintiff's actions described in its Complaint in this action were properly taken if the Court looks to the By-Laws in isolation, such inequitable actions do not become permissible simply because they are legally possible.[24]

In the Bylaw Action, SGRP seeks the following relief that is potentially relevant to the Director Defendants' pleadings in this action:

- A declaratory judgment that the August 8 Consent's bylaw amendments, and "[a]ny further action by [Brown and Bartels] to remove or attempt to remove any independent director," are void or voidable.[25]

- A ruling that Brown and Bartels owe fiduciary duties to SGRP and its minority stockholders and breached those duties "[b]y seeking to

---

[24] *See* D.I. 18 at 6.

[25] Bylaw Compl. at ¶¶ 76-86.

amend the By-Laws and entrench their control over SGRP so that they can divert Company resources to themselves[.]"[26]

- A ruling that Brown and Bartels conspired to "entrench their control over SGRP, strip the Board of its independence, misappropriate Company assets for their own personal benefit, and harm SGRP and its minority stockholders[.]"[27]

- Permanent injunctions severely limiting Brown's and Bartels' control over SGRP, including "enjoining [Brown and Bartels] from . . . removing or attempting to remove any independent director(s), [and] taking or attempting to take any other action to weaken or attempt to weaken the independence of SGRP's Board or any of its Committees[.]"[28]

On November 14, Brown moved for summary judgment in the 225 Action. The parties briefed the motion, and, on December 11, I heard argument. Discovery is still ongoing.

On December 13, the Director Defendants moved to supplement the summary judgment record to include a May 17, 2018, email from Brown in which he

---

[26] *Id.* at ¶¶ 87-89.

[27] *Id.* at ¶¶ 90-94.

[28] *Id.* at 39-40.

commented on the legal proceedings as described in a draft SGRP SEC filing. The parties briefed the Director Defendants' request and submitted the Motion to Supplement for decision on December 19.

## II. ANALYSIS

Brown seeks summary judgment on the grounds that the Director Consents are technically valid and effective, and that the SGRP Parties' allegations of inequity are purely collateral to this Section 225 proceeding and cannot be considered as a matter of law. The Director Defendants oppose summary judgment on the grounds that Section 225 permits the Court to consider their defense of inequitable conduct by Brown and Bartels, and that the Director Consents are not effective because notice to the minority stockholders has not been given under Section 228(e) or Rule 14c-2 of the Securities Exchange Act of 1934.

The parties focus on whether the Court may consider the alleged inequitable conduct in the abstract under Section 225, rather than whether that conduct has been proven and how it might apply to the Director Consents and the composition of the Board. Discovery in this action is ongoing and trial is scheduled to begin in just over a month. As a result, the Director Defendants continue to develop their defense of the 225 Action: that purportedly inequitable conduct by Brown and Bartels render the Director Consents voidable. The Director Defendants' defense is not sufficiently developed for a pre-trial merits ruling.

11

"There is no 'right' to a summary judgment."[29] "Summary judgment is appropriate when the record shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"[30] "The moving party bears the burden of establishing that there are no issues of material fact, and the court must review all evidence in the light most favorable to the non-moving party."[31] "The Court maintains the discretion to deny summary judgment if it decides that a more thorough development of the record would clarify the law or its application."[32]

The Director Defendants acknowledged at argument that there are no material disputed facts.[33] Accordingly, the only questions presented on the Motion for Summary Judgment are whether Brown is entitled to judgment as a matter of law, and whether a more thorough development of the record would clarify the law or its application.

---

[29] *Telxon Corp. v. Meyerson*, 802 A.2d 257, 262 (Del. 2002).

[30] *Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *3 (Del. Ch. Feb. 13, 2018) (quoting Ct. Ch. R. 56(c)).

[31] *Gary v. Beazer Homes USA, Inc.*, 2008 WL 2510635, at *3 (Del. Ch. June 11, 2008).

[32] *Zimmerman v. Crothall*, 2012 WL 707238, at *5 (Del. Ch. Mar. 5, 2012) (citations and internal quotation omitted), *as revised* (Mar. 27, 2012).

[33] Arg. Tr. at 14:19-15:7.

Separately, and in the context of these expedited proceedings, I grant the Motion to Supplement.[34] Because I need not reach the question of why SGRP declined to notify stockholders of the Director Consents, the evidence from the Motion to Supplement does not inform my analysis.[35]

> **A.** **Because The Director Defendants Have Asserted Inequitable Conduct Bearing On The Board's Composition, The 225 Action Will Continue To Trial.**

Brown asserts that summary judgment is appropriate because the Director Defendants' defense in the 225 Action that inequitable conduct by Brown and Bartels render the Director Consents voidable, however developed, cannot be cognizable under Section 225 as a matter of law. In particular, Brown rejects the Director Defendants' assertion that the seminal *Schnell v. Chris-Craft Industries, Inc.*[36] decision provides an additional equitable gloss on Section 225 that compels this Court to consider Brown's and Bartels' inequitable conduct as broadly pled in

---

[34] "A motion to reopen and supplement the record is addressed to the discretion of the Court." *Pope Investments LLC v. Benda Pharm., Inc.*, 2010 WL 3075296, at *1 (Del. Ch. July 26, 2010). While "the admission of late-submitted evidence is not favored," I conclude that the lack of prejudice and considerations of judicial economy control in the unique circumstances of this expedited, dual-track litigation. *See id.* (quoting *TR Investors, LLC v. Genger*, 2009 WL 4696062, at *12 n.36 (Del. Ch. Dec. 9, 2009)).

[35] *See infra* at 30-31.

[36] 285 A.2d 437 (Del. 1971).

13

the 225 and Bylaw Actions.  If Brown is right, the Director Consents' technical compliance with Section 228 is dispositive of the Board's composition.[37]

The Delaware Supreme Court summarized the scope of Section 225 proceedings in *Genger v. TR Investors, LLC*:

> A Section 225 proceeding is summary in character, and its scope is limited to determining those issues that pertain to the validity of actions to elect or remove a director or officer.  "In determining what claims are cognizable in a [Section] 225 action, the most important question that must be answered is whether the claims, if meritorious, would help the court decide the proper composition of the corporation's board or management team."  If not, then those claims "are said to be 'collateral' to the purpose of a [Section] 225 action and must be raised in a [separate] plenary action."[38]

Section 225 proceedings are *in rem*, "where the 'defendants' are before the court, not individually, but rather, as respondents being invited to litigate their claims to the *res* (here, the disputed corporate office) or forever be barred from doing so."[39] That *in rem* nature limits what the Court can decide under Section 225.  For instance, this Court may adjudicate a "claim that a director-respondent does not validly hold corporate office because that director obtained the office through fraud, deceit, or

---

[37] I address the Section 228 issues below, *infra* at 20-32.

[38] *Genger v. TR Inv'rs, LLC*, 26 A.3d 180, 199 (Del. 2011) (alterations in original) (quoting *Agranoff v. Miller*, 1999 WL 219650, at *17 (Del. Ch. Apr. 12, 1999)).

[39] *Id.* at 199-200; *see Levinhar v. MDG Med., Inc.*, 2009 WL 4263211, at *11-12 (Del. Ch. Nov. 24, 2009) (barring claims that were not properly raised in prior Section 225 action).

breach of contract. . . . but only for the limited purpose of determining the corporation's *de jure* directors and officers."[40]

Section 225's scope is narrow, but Brown incorrectly posits "that allegations of inequitable conduct should not and cannot be injected into a Section 225 action, particularly where it is undisputed that the corporate action was taken by a majority of stockholder votes."[41] Delaware courts reject the notion that "rigid, inflexible rules preclude this court from hearing anything but the narrowest arguments in Section 225 cases."[42] Instead, "the question [of] whether an issue is properly litigable in a Section 225 action turns . . . upon a determination of whether it is necessary to decide in order to determine the validity of the election or designation by which the defendant claims to hold office."[43] Issues beyond that are collateral to the narrow scope of a Section 225 proceeding and may not be considered.[44]

---

[40] *Genger*, 26 A.3d at 200.

[41] Opening Br. at 10.

[42] *Levinhar*, 2009 WL 4263211, at *11.

[43] *Kahn Bros. & Co. Profit Sharing Plan & Tr. v. Fischbach Corp.*, 1988 WL 122517, at *5 (Del. Ch. Nov. 15, 1988).

[44] *See Frankino v. Gleason*, 1999 WL 1032773, at *3 (Del. Ch. Nov. 5, 1999) ("Section 225 proceedings are necessarily narrow in scope in order to provide clear and quick relief. The Court of Chancery has historically been reluctant to entertain collateral issues that would take a Section 225 proceeding outside the narrow confines contemplated by Delaware law."), *aff'd sub nom. McNamara v. Frankino*, 744 A.2d 988 (Del. 1999).

15

### 1.    *Schnell* Is Consistent With Section 225.

The parties dispute how, if at all, *Schnell* informs the scope of inquiry under Section 225.  In *Schnell*, the Delaware Supreme Court rejected a company's attempt to thwart dissident stockholders by changing the annual meeting date, holding "that inequitable action does not become permissible simply because it is legally possible."[45]  Brown asserts that the narrow scope of Section 225 cannot include the broad principles in *Schnell*.  His interpretation of Delaware law paints a restrictive view of the claims that may arise in this proceeding.[46]

If Section 225 demanded only technical compliance with statutory consent requirements, then I would grant Brown's Motion.  But this Court has applied *Schnell*'s equitable principles in Section 225 actions.  For instance, in *Gassis v. Corkery*, the Court considered whether the plaintiff director's removal was voidable under Section 225 as either an impermissible retaliation for the director exercising

---

[45] *Schnell*, 285 A.2d at 439.

[46] Brown relies on: *Box v. Box*, 697 A.2d 395, 398 (Del. 1997) ("To preserve an expedited remedy, a proceeding brought pursuant to section 225 is a summary proceeding, and the Court of Chancery has consistently limited section 225 trials to narrow issues."); *Frankino*, 1999 WL 1032773, at *3 ("Section 225 proceedings are necessarily narrow in scope in order to provide clear and quick relief.  The Court of Chancery has historically been reluctant to entertain collateral issues that would take a Section 225 proceeding outside the narrow confines contemplated by Delaware law."); and *Bachmann v. Ontell*, 1984 WL 21204, at *1 (Del. Ch. Nov. 7, 1984) (rejecting "an affirmative defense [that] attempt[ed] to inject into the proceeding a collateral matter which is not within the contemplation of the statute under which the summary proceeding [had] been brought").

16

his Section 220 rights or breaches of fiduciary duty by the directors who removed the plaintiff from the board. Consistent with *Genger*, both issues related directly to the composition of the board.[47] *Gassis* serves as an example of this Court's ability to review appropriate claims of inequitable conduct within the boundaries of Section 225.[48]

In light of *Genger* and other precedent, I reject Brown's cramped view of this action and conclude that existing law on Section 225 permits the adjudication of inequitable conduct, as encouraged by *Schnell*, so long as those issues are germane to determining the composition of the Board. Courts weighing claims under Section 225 must consider cognizable allegations of fraud, deceit, breach of contract, breach of fiduciary duty,[49] and other claims that "if meritorious, would help the court decide

---

[47] *Gassis v. Corkery*, 2014 WL 2200319, at *14-16 (Del. Ch. May 28, 2014), *aff'd,* 113 A.3d 1080 (Del. 2015). I am not persuaded by Brown's attempt to distinguish *Gassis* on the grounds that the corporation involved was a charitable corporation. Opening Br. at 9. Brown concedes that *Gassis* reviewed the claims in question "because the Court was reviewing whether the directors breached their fiduciary duties by removing their fellow director." Reply Br. at 8 n.11.

[48] *Gassis*, 2014 WL 2200319, at *14-16; *see also Red Oak Fund, L.P. v. Digirad Corp.*, 2013 WL 5740103, at *11 (Del. Ch. Oct. 23, 2013) (considering a breach of fiduciary duty theory under Section 225).

[49] *Gassis*, 2014 WL 2200319, at *14-16 (deciding issue of whether "the removal [of a director] constituted a breach of duty" in the context of Section 225); *Red Oak Fund, L.P.*, 2013 WL 5740103, at *10 ("One of the most frequent theories under which stockholders have asked this Court to find an election invalid is a breach of fiduciary [duty] theory—in particular, a claim that the company and the board of directors made material misstatements or omissions during the proxy solicitation process.").

17

the proper composition of the corporation's board or management team."[50]  As a result, the Court must review issues that could infect the composition of a company's "*de jure* directors and officers" under Section 225, notwithstanding formal compliance with the voting procedures and requirements for those offices.[51]

*Schnell* empowers this Court to look at both technicalities and equities.[52] Section 225's jurisprudence, although narrower in scope, echoes that doctrine.  I read Delaware's existing law on Section 225 to embody an appropriately tailored version of the foundational principle "that inequitable action does not become permissible simply because it is legally possible."[53]

---

[50] *Agranoff*, 1999 WL 219650, at \*17; *see also Genger*, 26 A.3d at 199-200 (same); *Levinhar*, 2009 WL 4263211, at \*11 (rejecting argument that "rigid, inflexible rules preclude this court from hearing anything but the narrowest arguments in Section 225 cases," and noting that "[c]onsistent with what one would expect of a court of equity, this court has even permitted litigation over whether a stockholder had obtained his stock by defrauding the corporation").

[51] *Genger*, 26 A.3d at 200.

[52] *See generally Frederick Hsu Living Tr. v. ODN Holding Corp.*, 2017 WL 1437308, at \*10 (Del. Ch. Apr. 14, 2017) (stating that Delaware law follows the framework that "in every case, corporate action must be twice tested: first, by the technical rules having to do with the existence and proper exercise of the power; second, by equitable rules" (quoting Adolf A. Berle, *Corporate Powers as Powers in Trust*, 44 Harv. L. Rev. 1049, 1049 (1931))), *as corrected* (Apr. 24, 2017); *Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, 2011 WL 3505355, at \*16 (Del. Ch. Aug. 8, 2011) ("[A]s is standard in the examination of a business law case challenging the actions of a fiduciary, I first determine whether the fiduciary had the legal authority to make the decision in question, the source of the legal authority in this case being a contract. After doing that, I determine whether, assuming there was proper legal authority, that authority was used in conformity with the fiduciary duties owed by the fiduciary.").

[53] *Schnell*, 285 A.2d at 439.

18

## 2. The Director Defendants' Defense May Be Cognizable Under Section 225.

Brown moved for summary judgment on the theory that the Director Defendants' defense is fundamentally not cognizable as a matter of law under Section 225. Given the expedited nature of this action, the Director Defendants' defense continues to incubate in discovery.[54] In light of that timing and the contours of Section 225 that guide review in this matter, summary judgment turns on whether the Director Defendants have alleged as their defense sufficiently cognizable claims of inequitable conduct that may impact the composition of the Board.

I conclude that Brown is not entitled to judgment as a matter of law because the Director Defendants asserted, at this early stage, a sufficiently cognizable equitable defense under Section 225.[55] Their affirmative defense alleges inequitable conduct that, once developed, may affect the Director Consents and Brown's requested Board composition.[56] The Director Defendants are entitled to develop and

---

[54] When Brown filed the Motion, the parties had yet to issue responses and objections to outstanding interrogatories. Even now, the parties continue to produce documents.

[55] *See supra* at 9; D.I. 18 at 6.

[56] Although I find the Direct Defendants' defense sufficiently cognizable to deny the Motion as discovery continues, I do not rule today on whether those allegations are ultimately cognizable under Section 225. Once fully developed, they may fail to relate enough to the Director Consents and the composition of the Board to be cognizable. *See, e.g.*, *Frankino*, 1999 WL 1032773, at *3; *Bachmann*, 1984 WL 21204, at *1. But that determination is not appropriate before the close of discovery in a summary proceeding. *See Zimmerman*, 2012 WL 707238, at *5 ("The Court maintains the discretion to deny

19

test those allegations at trial. They need not prove them further at this stage when discovery is still ongoing.

The Motion is denied without prejudice to Brown's arguments on this issue. The 225 Action will proceed to trial immediately before the Bylaw Action.[57] The Court will determine the extent to which Brown's and Bartels' alleged inequitable conduct informs the composition of the Board with the benefit of a more developed record.

## B. The Director Consents Were Effective Upon Delivery On July 5, 2018.

The Motion for Summary Judgment also presents a more classic Section 225 dispute: whether the Director Consents were effective under Section 228. Brown asserts that they were effective upon delivery of the July 5 Consent. The Director Defendants counter that the Director Consents are not yet effective because the minority stockholders have not received notice of the corporate action.

---

summary judgment if it decides that a more thorough development of the record would clarify the law or its application.").

[57] *Levinhar*, 2009 WL 4263211, at *9 ("[P]arties may press a Section 225 action, file a companion complaint, and have the court consolidate those actions for a simultaneous trial when claims triable in a Section 225 action might provide a basis for broader relief.").

## 1. The Director Consents Were Effective Under Section 228 Upon Delivery.

Section 228 authorizes corporate actions by written consent and sets out the related notice requirements:

(a) Unless otherwise provided in the certificate of incorporation, any action required by this chapter to be taken at any annual or special meeting of stockholders of a corporation, or any action which may be taken at any annual or special meeting of such stockholders, may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the corporation . . . .

(e) Prompt notice of the taking of the corporate action without a meeting by less than unanimous written consent shall be given to those stockholders or members who have not consented in writing and who, if the action had been taken at a meeting, would have been entitled to notice of the meeting if the record date for notice of such meeting had been the date that written consents signed by a sufficient number of holders or members to take the action were delivered to the corporation as provided in this section[.]

The parties appear to agree that the Director Consents complied with all the provisions of Section 228 except for the prompt notice required under Section 228(e). At issue, then, is whether the absence of notice under Section 228(e) prevents an otherwise valid written consent from taking effect.

"Because [Section] 228 clearly and unambiguously permits a majority of the stockholders of a corporation to act immediately and without prior notice to the

21

minority, the statute must be given its plain meaning."[58] The first sentence of Section 228 provides that corporate action by written consent "may be taken without a meeting, *without prior notice* and without a vote[.]"[59] That plain language indicates that notice is not a condition precedent to an effective written consent. By contrast, other sections of Section 228 *are* conditions to effective corporate action. Section 228(a) provides that written consents may replace a stockholder meeting only "if" certain conditions are met, and Section 228(c) states that "[n]o written consent shall be effective . . . unless" the consents are properly delivered.[60] Unlike those provisions, Section 228(e) does not present notice as a condition precedent to an effective written consent.

Delaware case law confirms that reading. This Court has held that, generally, "a certificate [of incorporation] amended by written consent takes effect . . . even

---

[58] *Allen v. Prime Computer, Inc.*, 540 A.2d 417, 420 (Del. 1988).

[59] 8 *Del. C.* § 228(a) (emphasis added).

[60] *Id.* (stating that corporate active by written consent "may be taken without a meeting, without prior notice and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of outstanding stock having not less than the minimum number of votes that would be necessary to authorize or take such action at a meeting at which all shares entitled to vote thereon were present and voted and shall be delivered to the corporation"); *id.* at § 228(c) (stating that "[n]o written consent shall be effective to take the corporate action referred to therein unless written consents signed by a sufficient number of holders or members to take action are delivered to the corporation in the manner required by this section within 60 days of the first date on which a written consent is so delivered to the corporation").

before prompt notice is given."[61] That is because a written consent "permits immediate action"[62] and is "effective [] upon the delivery of the proper number of valid and unrevoked consents to the corporation."[63] "The action is effective when a legally sufficient consent (or consents) is delivered to the corporation at either its registered office in the State of Delaware or its principal place of business."[64] "[S]tockholders have the right . . . in the case of action taken by written consent, to receive prompt notice after the fact of the action taken."[65] I conclude that Section 228(e)'s notice requirement is not a condition precedent or prerequisite to a corporate action by written consent, but rather an additional obligation resulting from that corporate action.

Prompt notice to the minority stockholders is of critical importance. Failure to provide that notice has, in unique circumstances, compelled the Court to deviate from the default rule that written consents are effective upon delivery. This Court has refused to enforce a certificate of incorporation amended by written consent

---

[61] *Di Loreto v. Tiber Holding Corp.*, 1999 WL 1261450, at *5 (Del. Ch. June 29, 1999).

[62] *Espinoza v. Zuckerberg*, 124 A.3d 47, 57 (Del. Ch. 2015) (quoting *Carsanaro v. Bloodhound Techs., Inc.*, 65 A.3d 618, 641 (Del. Ch. 2013)).

[63] *Allen*, 540 A.2d at 420; *see also* Edward P. Welch, et al., 2 *Folk on the Delaware General Corporation Law* § 228.03 (6th ed.) ("Section 228 authorizes immediate stockholder action without a meeting[.]").

[64] 1 R. Franklin Balotti & Jesse A. Finkelstein, *The Delaware Law of Corporations and Business Organizations* § 7.29 (3d ed. Supp. 2018).

[65] *Zuckerberg*, 124 A.3d at 58.

under Section 228 when the company delayed notice to the non-consenting stockholders for months, until the failure to provide notice was remedied.[66] In *Di Loreto v. Tiber Holding Corporation*, the Court acknowledged that a certificate of incorporation amended by written consent normally takes effect upon its proper filing even before prompt notice is given, but found that the circumstances in that case justified making enforcement of the amendment dependent on notice.

*Di Loreto* involved a peculiar set of facts. Majority stockholders, aligned with the company, delivered a written consent to strip a share buyback provision from the certificate of incorporation.[67] That provision was the subject of separate litigation between the company and the plaintiff minority stockholders, but the company did not notify those stockholders of the written consent. The company also did not file the amended certificate until months after the written consent, and did so only when the minority stockholders made a demand under the buyback provision.[68]

*Di Loreto*'s primary ruling was that plaintiffs' buyback demand was effective because they made it before the company filed the amended certificate of incorporation.[69] But the Court also found that the company's months-long delay in

---

[66] *See id.* at 57; *Di Loreto*, 1999 WL 1261450, at *1-4.

[67] *Di Loreto*, 1999 WL 1261450, at *1-4.

[68] *Id.*

[69] *Id.*

notifying plaintiffs of the purportedly amended certificate of incorporation, especially in the midst of litigation about the buyback provisions, precluded enforcement of those amended provisions until the company gave plaintiffs notice under Section 228.[70] In so doing, the Court acknowledged that action by consent did not usually depend on notice, but held that the company's actions merited an exception to that rule.[71]

This case falls under the rule, not the *Di Loreto* exception. In *Di Loreto*, the majority stockholders enacting the written consent were aligned with the company against the minority stockholder plaintiffs, and the lack of notice prevented those plaintiffs from reacting promptly to the majority's written consent. In this case, the factions are aligned in the opposite configuration. Brown and Bartels acted by written consent, but SGRP opposes that corporate action and has independently declined to notify the stockholders, claiming that the lack of notice stops the consents from being effective.

*Di Loreto* applied its exception as a shield to protect the minority stockholder plaintiffs. Where the parties acting by written consent clash with the companies that

---

[70] *Id.* at *5.

[71] *Id.* ("Although a certificate amended by written consent takes effect upon proper filing even before prompt notice is given, failure to give notice promptly may in certain instances, such as this one, preclude enforcement of the amended provisions—at least until it is filed and notice is actually given.").

must deliver the notice, as here, applying *Di Loreto*'s exception would grant the companies a sword with which to delay or thwart written consents by slow-rolling notice to the stockholders. The consequences of withholding notice in those circumstances should be borne by the company, not the stockholders exercising their right to act by written consent.[72] SGRP's failure to give notice does not stymie the otherwise effective Director Consents. I conclude that Section 228 applies as written and the Director Consents were effective, at least in terms of technical compliance with Section 228, on July 5. The Motion is granted as to that narrow issue.

## 2. Rule 14c-2 Of The Exchange Act Does Not Preclude The Effective Written Consents Under Section 228.

The Director Defendants claim that Rule 14c-2 of the Securities Exchange Act of 1934 provides an independent notice requirement that precludes effective Director Consents until notice is given, but at the same time prevents SGRP from giving that notice.[73] The Director Defendants assert that Brown and Bartels, by filing

---

[72] *See, e.g.*, *Zuckerberg*, 124 A.3d at 58 ("[S]tockholders have the right to participate in a meeting at which a vote is to be taken after receiving notice and all material information or, in the case of action taken by written consent, to receive prompt notice after the fact of the action taken."); *In re Nine Sys. Corp. S'holders Litig.*, 2014 WL 4383127, at \*37 (Del. Ch. Sept. 4, 2014) (holding that failure to give adequate notice under Section 228(e) of written consent to amend company's governing documents was "powerful evidence of unfair dealing" and "inconsistent with the Board's fiduciary duties," but not finding any impact on the effectiveness of the corporate action), *abrogated on other grounds by Sciabacucchi v. Liberty Broadband Corp.*, 2018 WL 3599997, at \*10 (Del. Ch. July 26, 2018).

[73] *See* Answering Br. at 18-20; 17 C.F.R. § 240.14c-2.

amended Schedule 13Ds on August 6,[74] interrupted the ten-day period during which the SEC was to review the Preliminary Statement. As a consequence, the Director Defendants argue, the Preliminary Statement was never approved by the SEC and is no longer sufficiently accurate to disclose to SGRP's stockholders.[75] The Director Defendants conclude that, under Rule 14c-2, the lack of notice to stockholders precludes the Director Consents underlying that Preliminary Statement from taking effect, a situation for which "Brown and Bartels have only themselves to blame."[76] Brown counters that the SEC recently cast doubt on the Director Defendants' interpretation of the Exchange Act.[77]

The portion of Rule 14c-2 that the Director Defendants rely upon provides that:

> (a)(1) In connection with . . . the taking of corporate action by the written authorization or consent of security holders, the registrant shall transmit to every security holder of the class that is entitled to vote or give an authorization or consent in regard to any matter to be acted upon and from whom proxy authorization or consent is not solicited on behalf of the registrant pursuant to section 14(a) of the [Exchange] Act: (i) A written information statement containing the information specified in Schedule 14C (§ 240.14c–101);

---

[74] *See supra* at 7.

[75] *See* Answering Br. at 18-20.

[76] *See id.*

[77] *See* Reply Br. at 4-5 (citing Letter from CBS Corp. to SEC (June 7, 2018), https://www.sec.gov/Archives/edgar/data/813828/000089882218000041/filename1.htm; CBS Corp., SEC Comment Letter, File No. 001-09553 (June 13, 2018), https://www.sec.gov/Archives/edgar/data/813828/000000000018018332/filename1.pdf).

. . . .

(b) The information statement shall be sent or given at least 20 calendar days prior to the meeting date or, in the case of corporate action taken pursuant to the consents or authorizations of security holders, at least 20 calendar days prior to the earliest date on which the corporate action may be taken.[78]

Neither side briefed the scope of this Court's jurisdiction to interpret and apply Rule 14c-2.[79] I assume, without deciding, that the Court has jurisdiction to consider how a federal notice provision might inform the validity of the Director Consents under Delaware law. The parties agree that the Exchange Act Rules in play do not preempt Delaware law.[80] To the extent the Exchange Act might compel a different

---

[78] 17 C.F.R. § 240.14c-2. The Director Defendants purport that the Rule 14c-2 information statement is required to disclose, among other things, "members of the Board if any action is to be taken with respect to the election of directors . . . . a description of any amendment to the bylaws and the reasons and general effect of such amendments . . . . any matter in which any director or nominee or affiliated person of such director or nominee is a party adverse to SGRP or has a material interest adverse to SGRP . . . . [and] information regarding corporate governance, including such matters as the independence of members of the Board[.]" Answering Br. at 22-23.

[79] *See In re Ebix, Inc. S'holder Litig.*, 2014 WL 3696655, at *17 (Del. Ch. July 24, 2014) (holding that the Court of Chancery did not have subject matter jurisdiction over claim based on federal securities laws).

[80] *See* Reply Br. at 4-5; Reply to Mot. to Supp. at ¶ 7 n.3. That agreement comports with Delaware law. This Court has routinely held that the Exchange Act's policies of stockholder enfranchisement and notice complement and mirror those in Delaware law. *See, e.g.*, *Rich v. Fuqi Int'l, Inc.*, 2012 WL 5392162, at *4 (Del. Ch. Nov. 5, 2012) (holding that federal procedure to request exemption from proxy rules did not "affect the principles and goals of SEC proxy rules, which are still to protect the stockholder franchise and provide accurate information to stockholders," and that "[i]f anything, the [procedure] has actually harmonized Delaware and federal law by . . . reducing the likelihood of any outright conflict between the annual meeting requirement and the proxy rules"); *Esopus Creek Value LP v. Hauf*, 913 A.2d 593, 606 (Del. Ch. 2006) ("[T]he overriding purpose of

28

result than Section 228, "the important policies underlying the internal affairs doctrine [suggest] that the power of the state of incorporation . . . not be lightly overturned."[81] My application of Section 228 to the Director Consents is not affected by Rule 14c-2.

Even if Rule 14c-2 imposes a notice requirement beyond that found in Section 228, the Director Consents would still be effective under Delaware law. This Court has consistently found that corporations cannot avoid their obligations under Delaware law, like holding annual meetings, by pointing to additional or purportedly conflicting obligations under Rule 14 of the Exchange Act.[82] Those cases apply here in the related context of the stockholder franchise and notice under Section 228(e). The Director Consents remain effective insofar as they satisfied Section 228(e), and the Director Defendants cannot defeat that compliance with Delaware law by

---

federal regulation of the corporate proxy solicitation process is to protect shareholder voting rights."); *Newcastle Partners, L.P. v. Vesta Ins. Grp., Inc.*, 887 A.2d 975, 981 (Del. Ch. 2005) ("Nothing in either [the Exchange Act] or regulation suggests any purpose to interfere with the power of state courts to require that stockholder meetings be held in accordance with the requirements of state corporation law in situations where the registrant . . . is unable to comply with the literal terms of the SEC proxy rules."), *aff'd,* 906 A.2d 807 (Del. 2005).

[81] *Newcastle Partners, L.P.*, 887 A.2d at 981.

[82] *See Fuqi Int'l, Inc.*, 2012 WL 5392162, at *2-4; *Newcastle Partners, L.P.*, 887 A.2d at 979-82; *see also Williams v. Calypso Wireless, Inc.*, 2012 WL 424880, at *3 (Del. Ch. Feb. 8, 2012) (collecting "Delaware decisions addressing this recurring issue").

expressing concern over SGRP's ability to give notice under Rule 14c-2 in this context.

One additional dispute related to the Exchange Act remains. The Director Defendants argue that any notice they could give to stockholders regarding the Director Consents would be misleading or incomplete under Rule 14c-2 and Delaware law in light of the evolving issues raised in the 225 and Bylaw Actions.[83] They posit "that they should not be required to issue a notice exposing the company and its directors to the risk of litigation arising from that notice."[84] For the first time in their Reply to the Motion to Supplement, the Director Defendants assert that "[u]ltimately, the issue before the Court distills to this: Should this Court direct SGRP to issue the notice required under Section 228(e) in order to make the consents effective under [*Zuckerberg*] and, if so, what information should that notice contain?"[85]

That issue is not before me. No party in the 225 or Bylaw Action seeks an order or declaration regarding SGRP's notice obligations. The question of notice is only relevant in the 225 Action insofar as the Director Defendants assert that the

---

[83] *See* Answering Br. at 20-23; Reply to Mot. to Supp. at ¶¶ 2, 6. The Director Defendants argue that Brown conceded this point when he expressed concern about the way legal disputes were described in a draft SGRP SEC filing. *See* Mot. to Supp. at Ex. A.

[84] Reply to Mot. to Supp. at ¶ 7 n.3; *see also* Answering Br. at 20-23.

[85] Reply to Mot. to Supp. at ¶ 8.

Director Consents are ineffective due to the lack of notice. Contrary to the Director Defendants' phrasing of the issue, I need not mandate notice under Section 228(e) "in order to make the consents effective."[86] I have ruled that the Director Consents were effective on July 5, and that notice under Section 228(e) is an additional company obligation flowing from—not a condition precedent to—that corporate action. Having addressed the live issues under Section 228, I do not reach at this time whether the Director Defendants are acting prudently under Delaware law by withholding notice.[87]

There is a more fundamental problem with the Director Defendants' argument as it relates to the interaction between federal and Delaware law. "[A] rule meant to reinforce management accountability to stockholders [cannot] be used as a tool to indefinitely deprive stockholders of the franchise."[88] Here, the Director Defendants offer Rule 14c-2 as a basis to avoid giving stockholders notice.[89] Their position appears to be that the interlocking requirements in Rule 14c-2 and Section 228

---

[86] *See id.*

[87] *See XI Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1220 (Del. 2014) ("As noted, our courts do not issue advisory opinions.").

[88] *Fuqi Int'l, Inc.*, 2012 WL 5392162, at *3.

[89] Without reaching a ruling on the substance of Rule 14c-2, I note that even Director Defendants' interpretation of the regulation provides for a notice period ideally far shorter than the nearly six months that have passed since Brown and Bartels delivered the Director Consents. *See* Answering Br. at 18-20.

31

operate so as to essentially preclude SGRP from making *any* disclosure to the stockholders on the Director Consents in this situation.[90] "Such a position stands the purpose of corporate and securities law on its head."[91] Permitting the Director Defendants to indefinitely delay adequate notice to stockholders under Rule 14c-2 and Section 228, each of which independently encourages that notice, would pervert the incentives of both the SEC regulations and Delaware law. Accordingly, the Director Defendants' arguments regarding Rule 14c-2 do not inform my rulings on Section 228.

## III. CONCLUSION

For the foregoing reasons, the Director Defendants' Motion to Supplement the Summary Judgment Record is GRANTED, and the Motion for Summary Judgment is GRANTED in part and DENIED in part without prejudice to Brown's claims. This action will proceed to trial on the remaining issues.

**IT IS SO ORDERED**.

---

[90] Or, at least, that the disclosure would be "imprudent." *Id.* at 20-23.

[91] *Fuqi Int'l, Inc.*, 2012 WL 5392162, at *4. The Director Defendants have also not raised whether they attempted to request an exemption from the SEC related to their notice concerns. *See Esopus Creek Value LP*, 913 A.2d at 606 (where party claimed that conflicting SEC rules prevented a stockholder vote, finding that "[g]iven the mutually reinforcing purposes of these state and federal laws, there is reason to suppose that the SEC will duly consider a request for exemptive relief").