Don D. BOX and Box Control, LLC,
Plaintiffs Below, Appellants,

v.

Gary D. BOX and Douglas D. Box,
Defendants Below, Appellees.

No. 282, 1997.

Supreme Court of Delaware.

Submitted: July 22, 1997.
Decided: July 29, 1997.

M. Duncan Grant (argued), Daniel V. Folt
and Tara L. Lattomus of Pepper, Hamilton
& Scheetz, LLP, Wilmington, for appellants.

Robert K. Payson, Kevin R. Shannon (argued) and Roger D. Anderson of Potter, Anderson & Corroon, Wilmington, for Appellee Gary D. Box.

Joseph C. Schoell of Morris, James, Hitchens & Williams, Wilmington, for Appellee Douglas D. Box.

Before VEASEY, C.J., WALSH, HOLLAND, HARTNETT and BERGER, JJ, constituting the Court en Banc.

PER CURIAM:

In this case we decide that a first-filed statutory summary proceeding in the Delaware Court of Chancery to determine the validity of the election of directors should proceed expeditiously. We reach this determination notwithstanding the pendency of a second-filed suit in a Texas state court where the Texas action encompasses the same subject matter as the Delaware action, but is broader in scope, and the Texas action is actively proceeding toward an early trial. Under the circumstances of this case, we affirm the exercise of the Court of Chancery's discretion in refusing to enjoin the parties from proceeding in Texas. But we reach that determination on different grounds, and we expect that the Court of Chancery will proceed as expeditiously as feasible to schedule, hear and decide the Delaware proceeding.

### Facts

This expedited case is an interlocutory appeal from a decision by the Court of Chancery denying plaintiffs' motion for a preliminary anti-suit injunction against defendants who brought suit against plaintiffs in a Texas court two months after plaintiffs brought a summary proceeding against defendants in Delaware's Court of Chancery under section 225 of the Delaware General Corporation Law.[1]

The Box brothers, Don Box (plaintiff below-appellant) and Gary and Douglas Box (defendants below-appellees), were members of the board of Box Brothers Holding Company ("BBHC"). In 1996, Douglas created three separate trusts of which Douglas, Gary and Don are each co-trustees: the Don D. Box 1996 Trust (the "Don Trust"); the Gary D. Box 1996 Trust (the "Gary Trust"); and the Douglas D. Box 1996 Trust (the "Douglas Trust"). On February 23, 1996, the board of BBHC authorized the issuance of 33 shares of Class A voting stock. Those shares, which constitute all of BBHC's issued and outstanding voting shares, were issued in equal amounts to the three trusts.

On December 12, 1996, Gary suffered a stroke requiring him to be hospitalized for several days. The stroke affected Gary's speech, as well as his ability to read and comprehend. Shortly after Gary's stroke, Don suggested the formation of Box Control, LLC ("Box Control"). This was accomplished by executing irrevocable stock powers dated February 26, 1997, selling, assigning and transferring to Box Control all 22 shares of the BBHC Class A Voting Common Stock held by the Gary Trust and the Don Trust. As a result, Box Control became the holder of a majority of the issued and outstanding voting stock of BBHC. On March 3, 1997, Box Control removed the previous directors, Don, Gary, Douglas, Otto J. Buis and D. James Fajack from the BBHC board, and replaced them with the current directors, Don, Douglas, Patricia Arvin, J. Burke Asher and Stephen J. Craig.

Douglas contested the validity and effectiveness of the February 26, 1997 stock powers, claiming that Don and Gary breached their fiduciary duties in connection with those transfers. On March 4, 1997, Don and Box Control filed the Delaware action.

---

1. 8 Del.C. § 225 provides, in pertinent part, as follows:

**§ 225. Contested election of directors; proceedings to determine validity.**

(a) Upon application of any stockholder or director, or any officer whose title to office is contested, ... the Court of Chancery may hear and determine the validity of any election of any director, member of the governing body, or officer of any corporation, and the right of any person to hold such office, ... and to that end make such order or decree in any such case as may be just and proper, with power to enforce the production of any books, papers and records of the corporation relating to the issue.

Although Gary was named as a defendant in the Delaware action, he admitted the validity of the February 26, 1997 irrevocable stock powers. He also admitted that on March 3, 1997, Box Control properly removed the previous directors and elected the current directors.

A scheduling conference was held in the Delaware action on April 2, 1997. With all the parties' concurrence, the Court of Chancery entered an order expediting discovery and setting the matter for trial on June 16, 1997. Three weeks later, Gary reversed his position in the Delaware action. Gary's new posture, set forth in an April 24, 1997 letter to Don from James Hartnett, Esquire, Gary's newly retained Texas attorney, was that Gary had not understood the February 26, 1997 transactions and that he had signed the documents only because Don had unduly influenced him. The letter further reported Gary's intention to set aside the transactions by which the stock of the Gary Trust and the Don Trust were transferred to Box Control. On May 6, 1997, Gary moved in Delaware for leave to file an amended answer and for postponement of the June 16, 1997 trial date. The Court of Chancery granted Gary's motions.

On May 7, 1997, over two months after the filing of the Delaware action, Gary's Texas counsel filed an action in the Probate Court of Dallas County, Texas challenging the same sale, assignment and transfer of BBHC voting stock that was the subject of the Delaware action. In the Texas action, Gary further sought rescission of the February 26, 1997 documents, removal of Don as trustee of the Gary Trust, imposition of a constructive trust, compensatory damages, punitive damages, and attorneys' fees. The agreements that Gary seeks to rescind in the Texas action were executed in Texas and are governed by Texas law. The Texas action involves a jury trial, whereas the Delaware action, being a summary proceeding in Chancery, does not involve a jury trial.

On May 23, 1997, Don filed a Motion to Abate in the Texas court seeking to stay the Texas action. The motion was denied by the Texas court without opinion on June 16, 1997. The Texas court has set an August 11, 1997 trial date for the Texas action. On May 30, 1997, plaintiffs filed a motion in the Delaware Court of Chancery to enjoin Gary from prosecuting the Texas action. The court denied the motion in an oral ruling on June 24, 1997. Plaintiffs immediately requested and received certification of an interlocutory appeal. This Court accepted the appeal by Order dated July 2, 1997.[2]

On July 2, 1997, Gary and Douglas, acting as co-trustees of the Gary Trust and the Don Trust, removed Don as the sole manager of Box Control and named themselves managers. Thereafter, Gary and Douglas, acting as managers of Box Control and as co-trustees of the Douglas Trust, by written consent of the stockholders of BBHC, removed the BBHC directors purportedly elected by Don in March 1997 and elected Gary, Douglas and Don as directors. The written consents executed by Gary and Douglas provide that they are without prejudice to the claims or defenses asserted in the Delaware and Texas actions.

On July 16, 1997, before a panel of three justices, the parties presented oral argument to this Court. The Court then set the matter down for an *en Banc* hearing. Oral argument was heard before the Court *en Banc* on July 22, 1997.

### Standard of Review

■ This Court reviews for abuse of discretion the Court of Chancery's decision to deny a motion for a preliminary injunction.[3] Accordingly, we will not disturb that decision on appeal in the absence of a showing that it constituted an abuse of discretion.[4]

### Considerations for Enjoining Parties from Proceeding in a Second–Filed Action

■ When deciding whether or not to enjoin a party from proceeding in a second-

2. *Box & Box Control, LLC v. Box*, Del.Supr., No. 282, 1997, Berger, J. (July 2, 1997) (ORDER).

3. *Kaiser Aluminum v. Matheson*, Del.Supr., 681 A.2d 392, 394 (1996).

4. *Williams Gas Supply Co. v. Apache Corp.*, Del. Supr., 594 A.2d 34, 38 (1991).

filed action in another jurisdiction involving the same nucleus of operative facts as the first-filed action, the Court of Chancery should address the well-established principles in *General Foods v. Cryo–Maid* and its progeny.[5] Unfortunately, the Court of Chancery did not apply those factors in this case. We reaffirm that *Cryo–Maid* and its progeny set forth the principles by which the Court of Chancery should be guided. Accordingly, although we have concluded that the judgment of the Court of Chancery should be affirmed, we do so for different reasons.

This case is unique in at least three respects. First, the first-filed Delaware action was a summary proceeding commenced pursuant to 8 *Del.C.* § 225. Second, the Texas case involved issues that could not be resolved completely in the first-filed Delaware action. Finally, the Court of Chancery was not asked to stay the first-filed Delaware action.

■ We address each of these issues *seriatim*. It is not possible for a second-filed action at common law in another jurisdiction to be the mirror image of a statutory section 225 action filed first in Delaware. The purpose of section 225 is to provide a quick method for review of the corporate election process to prevent a Delaware corporation from being immobilized by controversies about whether a given officer or director is properly holding office.[6] To preserve an expedited remedy, a proceeding brought pursuant to section 225 is a summary proceeding,[7] and the Court of Chancery has consistently

limited section 225 trials to narrow issues.[8] Thus, a section 225 action is not to be used for trying purely collateral issues, issues of director misconduct or other breaches of duty.[9]

■ In the normal course of events, a Delaware section 225 proceeding should be heard and decided before a second-filed action in another jurisdiction. The Court of Chancery should actively manage such summary proceedings. The delay in the Court of Chancery is puzzling.

Yet, a trial and decision can still occur when this matter is remanded. This case presents a classic opportunity for the Court of Chancery to exercise the type of expedited decisionmaking for which it is renowned.[10] It may be possible for the Court of Chancery to hear and determine the Delaware action prior to the commencement of the Texas trial on August 11, 1997. We recognize, however, that it may not be feasible to accomplish such an early determination of the Delaware action at this point—a matter we leave to the Court of Chancery's discretion. The summary nature of the first-filed section 225 action in Delaware dictates that such an action can and should be decided promptly by the Delaware Court of Chancery, thereby making moot the request to stay or enjoin a second-filed action elsewhere.

We next address the difference between the nature of a section 225 action in Delaware and the broader claims for relief in the second-filed Texas action.[11] Generally, it is a

5. *General Foods Corp. v. Cryo–Maid, Inc.*, Del. Supr., 198 A.2d 681 (1964); *Taylor v. LSI Logic Corp.*, Del.Supr., 689 A.2d 1196 (1997); *Chrysler First Bus. Credit Corp. v. 1500 Locust Ltd. Partnership*, Del.Supr., 669 A.2d 104 (1995); *Parvin v. Kaufmann*, Del.Supr., 236 A.2d 425 (1967).

6. *Bossier v. Connell*, Del.Ch., C.A. No. 8624, 1986, slip op., 1986 WL 11534, Hartnett, V.C. (Oct. 7, 1986).

7. 2 Ernest L. Folk, III, The Delaware General Corporation Law § 225.3 (3d ed.1996); 2 Drexler, et al, Delaware Corporation Law and Practice § 29.04 (1997).

8. *Bossier v. Connell*, *supra* note 6 (citing *Bachmann v. Ontell*, Del.Ch., C.A. No. 7805–NC, 1984 WL 21204, Brown, C. (Nov. 5, 1984); *In re Chelsea Exchange Corp.*, Del.Ch., 159 A. 432

(1932); *Fleer v. Frank H. Fleer Corp.*, Del.Ch., 125 A. 411 (1924)).

9. *Id.* (citing *In re Tonopah United Water Co.*, Del.Ch., 139 A. 762 (1927)).

10. William H. Rehnquist, *The Prominence of the Delaware Court of Chancery in the State–Federal Joint Venture of Providing Justice*, 48 Bus.Law. 351 (1992).

11. The availability of a jury trial and the remedies sought by Gary in the Texas action are not available to him in Delaware's Court of Chancery in a section 225 proceeding: rescission of the documents giving rise to the two causes of action in this case; the creation of a constructive trust; removal of trustees; attorneys' fees; compensatory damages; punitive damages; and pre- and postjudgment interest. *See, e.g.*, 8 *Del.C.* § 225;

proper exercise of the Court of Chancery's discretion to permit parties simultaneously to pursue "non-mirror image" claims for relief in separate jurisdictions.[12] Principles of federalism often require considerations of comity between dual sovereign states. Well-established principles of collateral estoppel will address the preclusive effect of any factual determination that is made in the first case to be decided.[13]

Finally, we note that the Court of Chancery was not asked to and did not stay the first-filed Delaware action. This is an important distinction between this case and the *Williams* case.[11] Accordingly, even if this were a proceeding other than a section 225 proceeding, the parties would not be denied the benefit of proceeding with the first-filed action in Delaware. Delaware courts are always receptive to expediting any type of litigation in the interests of affording justice to the parties.[15]

Although section 225 proceedings are, by their nature, summary and expedited, inexplicably the Delaware action was not pressed vigorously by the Delaware plaintiffs. The Texas action was filed two months after the Delaware action, the Delaware trial date of June 16, 1997 evaporated, and the Delaware plaintiffs did not effectively press for summary disposition of the Delaware case.

The Delaware plaintiffs, with the encouragement of the Court of Chancery, sought, in effect, a stay of the Texas proceeding. That, too, failed. Although the Delaware action was first filed and was a summary proceeding that could have already been resolved, the Court of Chancery's reluctance to enjoin the parties from proceeding in Texas is understandable. There is, however, no stay of the Delaware action. Hence, it should proceed promptly.

### Conclusion

The judgment of the Court of Chancery is affirmed. The mandate will issue immediately.

---

*Marks v. Menoutis*, C.A. No. 12242, 1992 WL 22248, 1992 Del.Ch. LEXIS 13, Jacobs, V.C. (Feb. 3, 1992) (the Court of Chancery cannot, in a section 225 action, order a transaction to be rescinded or award money damages); *Pacific Ins. Co. v. Higgins*, C.A. No. 11284, 1993 WL 133181, 1993 Del.Ch. LEXIS 68, Allen, C. (Apr. 15, 1993) (the Court of Chancery will not award punitive damages); *Beals v. Washington Int'l, Inc.*, Del.Ch., 386 A.2d 1156 (1978) (the Court of Chancery does not have jurisdiction to award punitive damages); *McWane Cast Iron Pipe Corp. v. McDowell–Wellman Eng'g Co.*, Del.Supr., 263 A.2d 281, 283 (1970) (deference may be accorded a first-filed action if the court in which that action is pending is "capable of doing prompt and *complete* justice") (emphasis added).

12. *E.g.*, *Monsanto Co. v. Aetna Cas. & Sur. Co.*, C.A. Nos. 9576, 88C–JA–118, 1991 WL 215621, 1991 Del.Ch. LEXIS 154, Poppiti, J. (Sept. 25, 1991) (Delaware action and Texas action in this case involved two fundamentally distinct causes of action such that their simultaneous proceeding did not conflict with Delaware precedent in *ANR Pipeline Co. v. Shell Oil Co.*, Del.Supr., 525 A.2d 991 (1987), and *Williams Nat'l Gas Co. v. BHP Petroleum Co., Inc.*, Del.Supr., No. 429, 1989, 1990 WL 38329, Holland, J. (Mar. 12, 1990) (ORDER)).

13. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) (a party's federal constitutional rights are not violated by precluding the party from litigating in front of a jury issues which were previously decided by a judge). *But see Trapnell v. Sysco Food Servs., Inc.*, Tex.App., 850 S.W.2d 529 (1992) (a party's right to a jury trial under the Texas constitution may be violated if preclusive effect is given to facts found by a court in a prior case in which the party had no right to a trial by jury), *aff'd*, Tex.Supr., 890 S.W.2d 796 (1994).

14. *Williams Natural Gas Co. v. BHP Petroleum Co., Inc.*, Del.Supr., No. 429, 1989, 1990 WL 38329, Holland, J. (Mar. 12, 1990) (ORDER) (defendant filed a motion in the Court of Chancery requesting it to stay plaintiff's first-filed Delaware action in favor of defendant's second-filed Texas action after Texas court denied plaintiff's plea in abatement to stay the second-filed Texas action).

15. E. Norman Veasey, *The National Court of Excellence*, 48 BUS LAW. 357, 361 (1992); *see also* LEWIS S. BLACK, JR., WHY CORPORATIONS CHOOSE DELAWARE 5 (1993); LEO HERZEL & LAURA RICHMAN, FOREWORD TO R. FRANK BALOTTI & JESSE A. FINKELSTEIN, THE DELAWARE LAW OF CORPORATIONS AND BUSINESS ORGANIZATIONS F–9 (2d ed.1994).