**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Decided: March 6, 2025
Corrected: March 7, 2025

Michael J. Barry
Christine M. Mackintosh
Vivek Upadhya
William G. Passannante II
GRANT & EISENHOFFER P.A.
123 Justison Street
Wilmington, DE 19801

Jeremy D. Anderson
BAKER & HOSTETLER LLP
1201 N. Market Street, Suite 1407
Wilmington, DE 19801

Blake Rohrbacher
Daniel E. Kaprow
Elizabeth J. Freud
Benjamin O. Allen
RICHARDS, LAYTON & FINGER, P.A.
920 North King Street
Wilmington, DE 19801

A. Thompson Bayliss
Adam K. Schulman
Caleb R. Volz
ABRAMS & BAYLISS LLP
20 Montchanin Road, Suite 200
Wilmington, DE 19807

Jon E. Abramczyk
D. McKinley Measley
Alexandra M. Cumings
Louis F. Masi
MORRIS, NICHOLS, ARSHT
  & TUNNELL LLP
1201 N. Market Street
Wilmington, DE 19801

David E. Ross
S. Michael Sirkin
Elizabeth M. Taylor
ROSS ARONSTAM & MORITZ LLP
1313 North Market Street, Suite 1001
Wilmington, DE 19801

Re: *The New York City Employees' Retirement System, et al. v.*
*Barbara M. Byrne, et al.*, C.A. No. 2025-0126-KSJM

Dear Counsel:

This letter decision resolves the Motion to Expedite and Motion for a

Temporary Restraining Order brought by the New York City Employees' Retirement

System, the New York City Fire Department Pension Fund, the New York City Police

Pension Fund, the New York City Board of Education Retirement System, and the Teachers' Retirement System of the City of New York (collectively, "Plaintiffs").[1]

By way of background, Plaintiffs challenge an $8 billion merger between Paramount Global and Skydance Media LLC (the "Merger"), agreed to on July 7, 2024 (the "Merger Agreement"). Plaintiffs claim that the Merger will deliver hundreds of millions of dollars in non-ratable benefits to Paramount's controlling stockholder, Shari Redstone, who approved the Merger by written consent.[2] The Merger Agreement imposes a $400 million termination fee and does not include a fiduciary-out provision.[3] On January 25, 2025, an entity named Project Rise Partners ("PRP") submitted an all-cash offer to acquire Paramount in a transaction valued at more than $5 billion above the Merger price.[4] On January 27, 2025, the Paramount Special Committee comprising Barbara M. Byrne, Linda M. Griego, Judith A. McHale, and Susan Schuman (the "Special Committee Defendants") released a statement that "Paramount is bound by its agreement with Skydance [] and there will not be any engagement with PRP in contravention of such agreement."[5]

---

[1] C.A. No. 2025-0126-KSJM, Docket ("Dkt.") 2; Dkt. 21.

[2] Dkt. 46 ¶¶ 1–2, 5, 61, 65, 76–78, 85, 105.

[3] *Id.* ¶¶ 5, 11, 76, 85, 87.

[4] *Id.* ¶ 6.

[5] *Id.* ¶ 75.

Plaintiffs filed this suit for pre-closing relief on February 4, 2025.[6] Plaintiffs filed the Motion to Expedite on February 4, 2025, and the Motion for TRO on February 18 (together, the "Motions").[7] As scheduling relief, Plaintiffs ask the court to expedite discovery toward a trial on Plaintiffs' claim for a mandatory injunction sufficiently in advance of the closing date. Through the Motion for TRO, Plaintiffs ask the court to enjoin the parties to the Merger Agreement from closing the Merger pending resolution of Plaintiffs' claims.

In their opposition to the Motions, the Special Committee Defendants argued that Plaintiffs were not entitled to expedition or a TRO in part because they filed against the Special Committee Defendants only and did not name necessary parties, such as Paramount and Skydance.[8] In response, Plaintiffs filed a motion for joinder to add Paramount and Skydance.[9] During a March 3 hearing on the Motions, the court asked that Plaintiffs file their amended complaint by the end of the day.[10] The court also ordered that any newly named defendants would have until the end of the following day, March 4, to file oppositions to the Motions.[11]

---

[6] Dkt. 1.

[7] Dkts. 2, 21.

[8] Dkt. 15 ¶¶ 2–3, 16–19; Dkt. 34 at 4, 13–14.

[9] Dkt. 22.

[10] Dkt. 60 ("3/3/25 H'rg Tr.") at 14.

[11] *Id.* at 41.

Plaintiffs filed a Verified Amended Stockholder Class Action Complaint (the "Amended Complaint") at 5:02 p.m. on March 3, naming the following additional defendants (with the Special Committee Defendants, "Defendants"): Paramount; Skydance and merger subsidiaries affiliated with Skydance (the "Skydance Parties");[12] and Redstone and entities affiliated with her, including National Amusements, Inc. ("NAI," with Redstone, the "NAI Parties").[13] Paramount, the Skydance Parties, and the NAI Parties, filed oppositions to the Motions.[14]

There is no certainty as to when the Merger will close. Counsel for Paramount has represented that the earliest the Merger can close is March 20, 2025.[15] The Merger Agreement provides for an end date of April 7, 2025 (the "End Date").[16] But the Merger is subject to approval by the Federal Communications Commission (the "FCC"). And the parties may twice extend the End Date by 90 days if they have not obtained FCC approval.[17]

---

[12] The Skydance affiliates are: RB SKD AIV B, LP; New Pluto Global, Inc.; Pluto Merger Sub, Inc.; Pluto Merger Sub II, Inc.; and Sparrow Merger Sub, LLC.

[13] The entities affiliated with Redstone are: the Shari Ellin Redstone Trust; the Shari E. Redstone Qualified Annuity Interest Trust XVIII; National Amusements, Inc.; NAI Entertainment Holdings LLC; and SPV-NAIEH LLC. The Amended Complaint also names KKR Associates Opportunities II SCSP, which is a party to the Merger Agreement.

[14] Dkts. 50, 53, 51.

[15] 3/3/25 H'rg Tr. at 26–27.

[16] Dkt. 15 (Motion to Expedite Opposition), Ex. 1 at Annex A (Merger Agreement) § 9.1(c).

[17] *Id*.

Given the possibility of multiple 90-day extensions, the court requested more information concerning the FCC process during the March 3 hearing.[18] In a March 4 letter to the court, the Special Committee Defendants represented that they had consulted with "relevant individuals at Paramount and its external advisors" and had no insight into the timing of regulatory approval.[19]

Turning to the legal analysis, Plaintiffs' motion to expedite is granted. To obtain expedition, a party must "articulate a sufficiently colorable claim and show a sufficient possibility of a threatened irreparable injury" absent expedited proceedings.[20] This is not a high burden,[21] and "Delaware courts are always receptive to expediting any time of litigation in the interest of affording justice to the parties."[22]

The colorable claim standard is movant friendly. The court need not determine the merits of the case or even the legal sufficiency of the pleadings at this stage of the

---

[18] 3/3/25 H'rg Tr. at 25.

[19] Dkt. 54; *see also id.* ("Unfortunately, following those consultations, and given the discretion afforded to the FCC, we do not have further information concerning the FCC's anticipated timing for review or approval of the transaction beyond Paramount's previously stated expectation that the transaction is expect to close in the first half of 2025.").

[20] *Gomi Inv'rs, LLC v. Schimmell Hldgs., Inc.*, 2006 WL 2304035, at *1 (Del. Ch. July 27, 2006).

[21] *Renco Gp., Inc. v. MacAndrews AMG Hldgs. LLC*, 2013 WL 2019124, at *1 (Del. Ch. Jan. 28, 2013).

[22] *Box v. Box*, 697 A.2d 395, 399 (Del. 1997).

proceedings.[23] The court need only ask whether a party has asserted "essentially a non-frivolous cause of action."[24]

Plaintiffs claim that the Special Committee Defendants and the NAI parties breached their fiduciary duties and that the Skydance Parties aided and abetted in those breaches. It is a colorable claim that Redstone breached her fiduciary duties to Paramount's stockholders by entering into and single-handedly approving the Merger Agreement. It is also a colorable claim that the Skydance Parties knowingly participated in these breaches.[25] Defendants raise multiple factual defenses that may prevail, but Plaintiffs have met the low bar sufficient for expedition.

Plaintiffs have also demonstrated irreparable harm absent expedition. If the Merger closes before Plaintiffs' claims are heard, they face being "deprived forever of the opportunity to receive a . . . topping bid in a process free of taint from . . . improper activities" and motivations.[26] The potential loss of this unique opportunity is enough.

Given the uncertainty concerning the FCC process, the parties must assume that the Merger could close prior to the April 7 End Date and work toward a schedule

---

[23] *Morton v. Am. Mktg. Indus. Hldgs., Inc.*, 1995 WL 1791090, at *2 (Del. Ch. Oct. 5, 1995) (internal quotations omitted).

[24] *Reserves Dev. Corp. v. Wilmington Trust Co.*, 2008 WL 4951057, at *2 (Del. Ch. Nov. 7, 2008).

[25] *See C & J Energy Servs., Inc. v. City of Miami Gen. Emps.' and Sanitation Emps.' Retirement Trust*, 107 A.3d 1049 (Del. 2014) (recognizing that equitable relief overriding the counterparty's contract rights is available where the counterparty aided and abetted sell-side breach).

[26] *In re Del Monte Foods Co. S'holders Litig.*, 25 A.3d 813, 838 (Del. Ch. 2011).

that allows the court to resolve Plaintiffs' claims sufficiently in advance of that date. This is a break-neck pace but doable.[27]  Perhaps the parties can negotiate a more civilized schedule in the event they learn that the FCC process is not likely to conclude by April 7.

Plaintiffs' Motion for TRO is denied.  To obtain a TRO, "a party must demonstrate: (i) the existence of a colorable claim, (ii) the irreparable harm that will be suffered if relief is not granted, and (iii) a balancing of hardships favoring the moving party."[28]  Although Plaintiffs have demonstrated harm sufficient to support expedition, there does not seem harm proximate enough to warrant a TRO.[29] Defendants have not yet set a closing date given the uncertainties with the FCC process.  Defendants are ordered to give Plaintiffs advance notice—optimally of no fewer than five business days—of the closing date once it is set so that Plaintiffs can renew their Motion for TRO if events warrant.

The parties are ordered to confer and submit a proposed case schedule to the court.

---

[27] *See FrontFour Cap. Gp. LLC v. Taube*, 2019 WL 1313408, at *1 n.1 (Del. Ch. Mar. 11, 2019) (complaint filed on Feb. 11, 2019; post-trial decision issued on March 11, 2019).

[28] *Arkema Inc. v. Dow Chem. Co.*, 2010 WL 2334386, at *3 (Del. Ch. May 25, 2010).

[29] *See In re COVID-Related Restrictions on Religious Servs.*, 285 A.3d 1205, 1227 (Del. Ch. 2022) ("A TRO is an emergency remedy."); *Roseton OL, LLC v. Dynegy Hldgs. Inc.*, 2011 WL 3275965, at *17 (Del. Ch. July 29, 2011) ("Preliminary injunctive relief in the form of a TRO or otherwise is an extraordinary remedy that should not be issued in the absence of a clear showing of imminent irreparable harm to the moving party.").

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Chancellor

cc:    All counsel of record (by *File & ServeXpress*)