**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

NATHAN A. COOK
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

July 11, 2025

William E. Green, Jr.
John G. Harris
Timothy S. Spangler, III
Halloran Farkas + Kittila LLP
5722 Kennett Pike
Wilmington, DE 19807

Scott B. Czerwonka
Wilks Law LLC
4250 Lancaster Pike, Suite 200
Wilmington, DE 19805

RE: *Benjamin Nazarian, et al. v. Khosrow (Jack) Sassouni, et al.,*
C.A. No. 2025-0052-NAC

Dear Counsel:

I am asked to decide a number of difficult and close questions of fact and law. This is not one of them.

Plaintiffs Benjamin Nazarian and Eliott Sassouni bring this action under 8 *Del. C.* § 225 seeking a determination of the proper composition of the board of directors of Iridium Industries Inc. ("Iridium" or the "Company"), a Delaware corporation. Plaintiffs also seek additional declaratory relief. In response, Defendant Khosrow (Jack) Sassouni moves to dismiss or stay in favor of litigation pending in New York.

After a trial on a paper record, I conclude Iridium's board of directors consists of Jack Sassouni, Benjamin Nazarian, and Eliott Sassouni. As explained below, I am

denying Defendant's motion to dismiss or stay, and my judgment is for Plaintiffs on Counts I, II, and III. As to Count IV and Plaintiffs' request for an award of attorneys' fees, I decline to address both at this time.

## I.      FACTUAL BACKGROUND

The following facts were stipulated by the parties or proven by a preponderance of the trial evidence.[1]

## A.      The Company

In 1998, brothers Khoshrow (Jack) Sassouni and Eli Sassouni founded Iridium.[2] Today, Iridium remains a privately held company[3] and is a leading United States manufacturer of squeezable plastic tubes.[4] The Company does business under the trade name "Artube."[5]

Eli passed away on April 9, 2009.[6] At the time of Eli's death, the Company had 1,000 shares of common stock issued and outstanding, held by three stockholders:

---

[1] Joint trial exhibits are cited as "JX ___." When discussing individuals with the same last name, the Court relies on first names for convenience. No disrespect is intended.

[2] *Benjamin Nazarian, et al. v. Khosrow (Jack) Sassouni, et al.*, C.A. No. 2025-0052-NAC, Docket ("Dkt.") 61, Pre-Trial Stipulation and] Order ("Pre-Trial Stip.") ¶¶ 26, 28; *see also* JX 1.

[3] Pre-Trial Stip. ¶ 26.

[4] *Id.* ¶ 27.

[5] *Id.*

[6] *Id.* ¶ 30.

Jack, Eli, and Eli's father-in-law, Parviz Nazarian.[7] Each brother held 400 shares of common stock, and Parviz Nazarian held 200 shares of common stock.[8] Eli bequeathed his 400 shares to trusts for the benefit of his wife and each of his three sons.[9]

Parviz Nazarian passed away on August 23, 2017, and bequeathed his 200 shares of Iridium stock to his wife, Pouran Nazarian.[10]

**B.    Eli's Will**

The Last Will and Testament of Eli Sassouni (the "Will") created four testamentary trusts.[11] Article SIXTH of the Will created a trust for the benefit of Eli's wife, Dalia Sassouni, (the "Marital Trust").[12] The Martial Trust owns 166 shares of Iridium common stock.[13] Article FIFTH of the Will created three trusts for the benefit of Eli's three children:  Plaintiff Eliott Sassouni, Ethan Sassouni, and Ryan Sassouni (the "Article Fifth Trusts" and, together with the Marital Trust, the

---

[7] *Id.* ¶ 29.

[8] *Id.*

[9] *Id.* ¶¶ 30, 32.

[10] *Id.* ¶ 31.

[11] *Id.* ¶ 32.

[12] *Id.* ¶ 33.

[13] *Id.*

"Trusts").[14]  Each of the Article Fifth Trusts holds 78 shares of Iridium common stock.[15]  The Article Fifth Trusts collectively hold 234 shares.[16]

The Will appointed Dalia and Jack as co-trustees of the Trusts.[17]  Under Article THIRTEENTH of the Will, Jack, as co-trustee, had the power to make all decisions with respect to the Trusts' interests in Iridium—including voting the stock.[18]

## C. The New York Litigation

In 2018, Dalia, Eliott, Ethan, and Ryan, as beneficiaries of the Trusts, filed petitions in the New York Surrogate's Court to compel Jack to account as co-trustee.[19] In 2023, following trial, the New York Surrogate's Court removed Jack as co-trustee of the Marital Trust.[20]  All parties to the Surrogate's Court proceedings appealed the decision as of right.[21]   The New York appellate court deemed those appeals

---

[14] *Id.* ¶ 34.

[15] *Id.*

[16] *Id.*

[17] *See* JX 4 (Last Will and Testament of Eli Sassouni).

[18] Pre-Trial Stip. ¶ 38; *see also* JX 4.

[19] JX 6 at 2.

[20] Pre-Trial Stip. ¶ 39.

[21] *Id.*

premature.[22]  Jack then sought to appeal his removal as trustee by permission.[23] That application remains pending.[24]

On November 1, 2023, the New York Surrogate's Court issued successor letters of trusteeship appointing Dalia and Benjamin as co-trustees of the Marital Trust.[25] On June 5, 2024, the New York Surrogate's Court issued temporary letters of trusteeship appointing Dalia and Benjamin as co-trustees of the Article Fifth Trusts.[26]  Jack appealed his temporary suspension as trustee of the Article Fifth Trusts and Benjamin's appointment as temporary co-trustee in his place.[27]  That appeal remains pending.[28]

## D.    The December 9 Stockholders' Meeting

On September 13, 2024, after his appointment as co-trustee of the Trusts, Benjamin emailed Jack requesting that he call a meeting of stockholders and attaching a notice of special meeting of Iridium's stockholders and a draft waiver of

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* ¶ 40.

[26] *Id.* ¶ 41.

[27] *Id.*

[28] *Id.*

notice.[29]   The agenda included with the notice contained three potential items of business: amending the Company's bylaws, electing Jack, Benjamin, and Eliott as directors, and considering any other matters properly brought forward.[30]

The parties negotiated the logistics of the stockholders' meeting through counsel—ultimately, agreeing to hold the meeting at 2:00 p.m. on December 9, 2024.[31] Before the meeting, Benjamin's counsel asked Iridium to issue updated stock certificates and requested that Defendant's counsel confirm which stockholders could vote and how many shares they held.[32]   Defendant's counsel responded, stating in relevant part: "While Iridium will not be issuing the requested new stock certificates (for reasons including, but not limited to, the pendency of the litigations concerning the trusteeship of both the Article Sixth and Article Fifth trusts), Iridium will agree that, for the limited purpose of the December 9 meeting, Pouran and Ben (the latter as the current trustee of the aforementioned trusts) have the right to vote the shares."[33]

---

[29] *Id.* ¶ 42; *see also* JX 18.

[30] Pre-Trial Stip. ¶ 43; *see also* JX 18 at 21.

[31] Pre-Trial Stip. ¶¶ 44, 46; *see also* JX 18.

[32] *See e.g.*, JX 18 at 6.

[33] Pre-Trial Stip. ¶ 45; *see also* JX 18 at 8.

Benjamin appeared at the December 9 stockholders' meeting in person.[34] Pouran Nazarian appeared at the meeting by proxy given to Eliott,[35] and Jack appeared at the meeting by proxy given to his counsel.[36] The first item on the agenda was amending the Company's bylaws to, among other things, expand the board of directors to three.[37] Benjamin, as co-trustee of the Trusts, and Eliott, as proxy for Pouran, voted for the amendments.[38] Jack, through his counsel, voted against the amendments.[39]

Out of the 1,000 shares outstanding, 600 shares were voted for the amendments and 400 shares were voted against the amendments.[40] After the vote, Jack's counsel confirmed that the bylaws were amended, but stated that "the amendment[s] [are] going to be held in abeyance until there is a resolution of the litigation pertaining to Mr. Nazarian's trusteeship and ability to vote the Trust

---

[34] Pre-Trial Stip. ¶ 50.

[35] *Id.* ¶ 49; *see also* JX 19.

[36] Pre-Trial Stip. ¶ 48; *see also* JX 20.

[37] JX 22 at 1.

[38] *Id.* at 2.

[39] *Id.* at 1.

[40] *See id.* at 1–2.

Shares."[41]  Benjamin asked if there was any law to support that position, and Defendant's counsel stated that "he did not know."[42]

The next item on the agenda was electing Jack, Benjamin, and Eliott to Iridium's board of directors.[43]  Benjamin, on behalf of the Trusts, and Eliott, on behalf of Pouran, voted for the slate.[44]  Jack, through counsel, voted against the slate.[45]  The slate received majority approval, with 600 out of 1000 shares voted in favor of the slate.[46]

## E.   The December 16 Board Meeting

On December 11, 2024, Benjamin sent a notice and agenda for a special meeting of Iridium's directors to be held via Zoom on December 16, 2024 to Iridium's directors, including Jack.[47]  The agenda for the meeting included the election of Company officers.[48]  On the day the meeting was supposed to be held, Defendant's counsel emailed Plaintiffs' counsel stating: "[a]s you know from our meeting last

---

[41] *Id.* at 2.

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *See id.* at 1–2.

[47] Pre-Trial Stip. ¶ 52; *see also* JX 25.

[48] JX 25 at 2.

Monday, Ben's notice of a special Board meeting for later today is of no force and effect as Ben is not a director and therefore has no power to call such a meeting."[49]

The December 16 board meeting was attended by Benjamin and Eliott.[50] Jack did not attend.[51] At the meeting Benjamin and Eliott elected Eliott as the Chief Financial Officer of the Company and Benjamin as the Company's Corporate Secretary.[52] They also elected Benjamin as the Chairman of the Board and discussed other agenda items.[53] Finally, Benjamin and Eliott as directors passed several resolutions, including a resolution directing the Company to create a 2025 budget and a resolution directing the Company to issue a cash dividend to its stockholders to cover each stockholder's tax obligation resulting from the Company's S corporation status for 2022 and, if applicable, 2023.[54]

## F. The December 11 Dividend

On January 7, 2025, Defendant's counsel sent a letter to the beneficiaries of the Trusts' informing them that on December 11, 2024, the Company had purported to issue a pro rata distribution to Iridium's stockholders totaling $6,750,000 (the

---

[49] Pre-Trial Stip.¶ 53; *see also* JX 26.

[50] JX 27 at 2.

[51] *Id.*

[52] *Id.*

[53] *See id.* at 3–4.

[54] *Id.*

"December 11 Dividend").[55]  Checks to Pouran Nazarian and the Trusts were enclosed.[56]

The December 11 Dividend represented nearly all of the Company's available cash; the parties disagree, however, on exactly how much money the Company would have retained had all the dividend checks been cashed.[57]  Defendant asserts that if the checks were cashed, the Company would still have "north of a million dollars" in the bank.[58]  But JX 49 (the Company's January 2025 bank statement) suggests that, had Pouran Nazarian and the Trusts cashed their dividend checks when they

---

[55] Pre-Trial Stip. ¶ 54 ("On January 7, 2025, Defendant's counsel, Jay W. Freiberg, Esq., sent a letter to Mark Elliott, Esq., New York counsel to Plaintiff Eliott Sassouni, his two brothers, and their mother, purporting to issue a pro rata distribution to Iridium stockholders totaling $6,750,000, and enclosing checks to Pouran Nazarian, the Article Fifth Trusts, and the Marital Trust."); *see also* JX 30 at 1.

[56] Pre-Trial Stip. ¶ 54; *see also* JX 30 at 1.

[57] *Compare* Dkt. 53, Pls.' Pre-Trial Answering Br. ("Pls.' AB") at 17 ("Had the Trusts and Pouran deposited their checks in January 2025 when Defendant sent them, Iridium would have been left with just $530,000 by the end of the month.") *with* Dkt. 50, Def.'s Pre-Trial Opening Br. ("Def.'s OB.") at 20 ("[The dividend] did absolutely nothing at all to impair, much less jeopardize, Iridium's financial well-being—notwithstanding Plaintiffs' allusions in this proceeding to the contrary.  As company bank statements . . . make clear, plenty of cash remained and still remains.").

[58] Dkt. 65, Trial Tr. ("TT") 57:8–11 ("And regarding the dividend, first of all, it did not leave the company penniless.  It still left the company north of a million dollars in the bank."); *see also* Def.'s OB at 20.

received them in January, the Company would have been left with a bank balance that was substantially less.[59]

Plaintiffs' counsel responded with a letter objecting to the dividend, stating that Pouran Nazarian and the Trusts would not deposit their dividend checks, and demanding that Defendant likewise not deposit his check.[60] The letter also enclosed a notice and agenda for a meeting of Iridium's board of directors set for January 13, 2025 to consider a resolution declaring the December 11 Dividend unauthorized and void.[61]

## G. The January 13 Board Meeting

On January 13, 2025, Iridium's board held a videoconference meeting.[62] Benjamin and Eliott attended the meeting.[63] Jack did not attend.[64] Benjamin and Eliott voted on and passed a resolution declaring the December 11 Dividend

---

[59] *See* JX 30 (indicating distributions to the Trusts and Pouran Nazarian total $4,050,000.00); JX 49 (providing that the Company's end of January 2025 bank balance was $4,580,206.61); *see also* Pls.' AB at 17.

[60] Pre-Trial Stip. ¶ 55; *see also* JX 31.

[61] Pre-Trial Stip. ¶ 55; *see also* JX 31. Defendant attempts to rationalize his actions to cause the Company to send out checks for the bulk of its cash days after the new board's election, by pointing out that his many prior years of refusing to issue dividends had been a focus of the Surrogate's Court's proceedings. *See* TT 57:19–58:2; *see also* Def.'s OB at 20. But Plaintiffs respond that, with the election of the new board, it was no longer Defendant's unilateral decision to make. *See* Dkt. 49, Pls.' Opening Pre-Trial Br. ("Pls.' OB") at 46–47.

[62] JX 32.

[63] *Id.* at 3.

[64] *Id.*

unauthorized and void and directing the Company to stop payment on the related

checks.[65] Defendant deposited the check representing his pro rata share of the

December 11 Dividend.[66]

**H.     Procedural History**

Plaintiffs commenced this action on January 16, 2025.[67] After I entered a

scheduling order providing that "the court expects the parties to confer about a

schedule for this matter in the first instance,"[68] Defendant did not meet and confer

with Plaintiffs to discuss scheduling and the entry of a status quo order.[69] So

Plaintiffs filed a Motion for Status Conference and Entry of Status Quo Order.[70] After

a hearing on Plaintiffs' motion, Defendant stipulated to a status quo order.[71]

---

[65] *Id.*

[66] Pre-Trial Stip. ¶ 56; *see also* JX 34.

[67] Dkt. 1, Verified Compl. Pursuant to 8 Del. C. § 225 and for Declaratory Relief.

[68] Dkt. 4, Scheduling Letter.

[69] *See* Dkt. 9, Pls.' Mot. for Status Conference and Entry of Status Quo Order ("Pls.' Mot. for SQO") Ex. 1.

[70] Pls.' Mot. for SQO.

[71] Dkt. 19, Stipulated Status Quo Order. Notably, the status quo order contains a provision requiring Defendant to provide Plaintiffs with "view-only" access to Iridium's bank accounts. It turns out that Defendant could never comply with this provision but did not confirm that until after agreeing to the status quo order. *See* JX 34 (indicating that, after the status quo order was entered, a representative of Iridium's bank confirmed that view-only online access was not possible).

When Defendant failed to answer the complaint and, instead, moved to dismiss after the deadline had passed, Plaintiffs filed a Motion for Entry of a Scheduling Order.[72]  I heard oral argument on the motion and deferred consideration of Defendant's Motion to Dismiss or Stay until trial.[73]  The parties then stipulated to a case schedule.[74]  I held a trial on a paper record in this matter on May 28, 2025.

## II.    ANALYSIS

Section 225(a) of the Delaware General Corporation Law provides that "[u]pon application of any stockholder or director . . . the Court of Chancery may hear and determine the validity of any election, appointment, removal or resignation of any director or officer of any corporation . . . ."[75]  "A Section 225 action is a form of *in rem* proceeding 'where the defendants are before the court not individually, but rather, as respondents being invited to litigate their claims to the *res* . . . or forever be barred from doing so.'"[76]  In this way, Section 225 actions "provide a quick method for review of the corporate election process to prevent a Delaware corporation from being

---

[72] Dkt. 28, Pls.' Mot. for Entry of Scheduling Order.

[73] Dkt. 43, Tr. Telephonic Oral Argument and Rulings of the Court on Pls.' Mot. for Entry of Scheduling Order 30:9–18.

[74] *See* Dkt. 40, Stipulation and Order Governing Case Scheduling.

[75] 8 *Del. C.* § 225(a).

[76] *Hockessin Cmty. Ctr., Inc. v. Swift*, 59 A.3d 437, 453 (Del. Ch. 2012) (quoting *Genger v. TR Investors, LLC*, 26 A.3d 180, 199–200 (Del. 2011)).

immobilized by controversies about whether a given officer or director is properly holding office."[77]

Section 225(b) of the DGCL also allows the Court of Chancery to "hear and determine the result of any vote of stockholders upon matters other than the election of directors or officers."[78]  In this Section 225 proceeding, Plaintiffs bear the burden of proving by a preponderance of the evidence that they are entitled to relief.[79]

A.    **Benjamin Nazarian Had the Power to Vote the Trusts' Shares**

The composition of Iridium's board turns on whether Benjamin Nazarian had the power to vote the Trusts' shares at the December 9 stockholders' meeting.  The answer is: he did.

The letters of trusteeship issued by the New York Surrogate's Court empowered Benjamin to act as co-trustee of the Marital Trust and the Article Fifth Trusts.[80]  Under New York law, "letters granted by the court are conclusive evidence of authority of the persons to whom they are granted until the decree granting them is reversed or modified upon appeal or the letters are suspended, modified or revoked

---

[77] *Box v. Box*, 697 A.2d 395, 398 (Del. 1997) (citing *Bossier v. Connell*, 1986 WL 11534, at *2 (Del. Ch. Oct. 7, 1986)).

[78] 8 *Del. C.* § 225(b).

[79] *See In re IAC/InterActive Corp.*, 948 A.2d 471, 493 (Del. Ch. 2008).

[80] *See* JX 8 (successor letters of trusteeship appointing Benjamin co-trustee of the Marital Trust); JX 11 (temporary letters of trusteeship appointing Benjamin co-trustee of the Article Fifth Trusts).

by the court granting them."[81]  Such letters of trusteeship may "contain appropriate recitals restraining the holder from doing such acts or exercising any such powers as may be specified therein until the further order of the court . . ."[82]

The letters of trusteeship appointing Benjamin as trustee of the Marital Trust and the Article Fifth Trusts have not been reversed, suspended, modified, or revoked. Accordingly, Benjamin, as co-trustee of the Trusts, was empowered to vote the Trusts' shares at the December 9 stockholders' meeting. And, as Plaintiffs well explain, the plain language of these letters "impose[d] no limitation on the authority conferred on Mr. Nazarian."[83]  Thus, a majority of the Company's shares were voted in favor of amending the bylaws, and electing Jack, Benjamin, and Eliott to Iridium's board of directors. Later, Benjamin and Eliott, as directors, voted to elect Eliott as Chief Financial Officer and Benjamin as Corporate Secretary and Chairman of the Board.[84]

## B.     Defendant's Motion to Dismiss or Stay Is Denied

Despite all this, Defendant has moved to dismiss or stay the Section 225 proceeding. First, Defendant asserts that this action should be dismissed because the letters of trusteeship are not entitled to full faith and credit in Delaware. Second,

---

[81] N.Y. Surr. Ct. Proc. Act § 703 (McKinney 2025).

[82] *Id.* § 702.

[83] Pls.' AB at 27.

[84] As discussed below, Defendant does not present an argument as to the election of officers at the December 16 board meeting beyond his general arguments that this action should be dismissed or stayed pending the resolution of the New York litigation.

Defendant argues that this action should at a minimum be stayed until all appeals in New York are complete, which Defendant acknowledges could take years.[85]

### a.      Full Faith and Credit Does Not Require Dismissal

Defendant argues that the letters of trusteeship are not entitled to full faith and credit because they "are the result of interim, non-final rulings of a New York trial court," and Defendant has appealed the Surrogate's Court's rulings.[86]  But the pending appeals do not mean that the letters lacked legal effect on December 9, 2024, or lack legal effect now.  Because they have not been reversed, suspended, modified, or revoked, the letters of trusteeship are, per New York statute, "conclusive evidence" of Benjamin's authority as a co-trustee.

Defendant largely ignores and otherwise fails to grapple with these issues, and his argument can hardly be said to be well-developed.  If anything, dismissing this action would suggest that, contrary to New York law, the letters of trusteeship did not empower Benjamin to act with actual effect.  Such a result seems plainly contrary to the intent of not only the New York Surrogate's Court but also the New York state legislature.  Indeed, the relevant New York statute provides that the Surrogate's Court may limit the temporary trustee's power if limitations or conditions appear in

---

[85] *See e.g.*, TT 71:24–73:20.

[86] Dkt. 54, Def.'s Answering Br. at 2.

the letter.[87]    Because the letters of trusteeship contain no such limitations or conditions, Benjamin's power to vote the Trusts' shares is precisely the outcome intended by New York law.  And Defendant does not put forward any precedent suggesting otherwise.  So, framed in light of the relevant question here—namely, did Benjamin have the power to vote on the date of the stockholders meeting—the answer is yes.

Accepting Defendant's argument would, from a practical perspective, suggest either that the Trusts have no trustee empowered to act in such capacity or that Defendant—whom the New York Surrogate's Court removed as trustee for fiduciary duty breaches—in effect remains co-trustee of the Trusts.  Besides being inconsistent with New York law, neither outcome is consistent with Defendant's representations before the December 9 stockholders' meeting and during the pendency of this litigation.  In the lead up to the stockholders' meeting, Defendant represented through his counsel that Benjamin, "as the current trustee" would have the right to vote the Trusts' shares—at least "for the limited purpose of the December 9 meeting."[88]    And during this litigation, Defendant's counsel has continued to

---

[87] *See* N.Y. Surr. Ct. Proc. Act § 702 (McKinney 2025).

[88] JX 18 at 8.

represent that Benjamin had the power to vote the Trusts' shares at the December 9 stockholders' meeting and has the power to vote the Trusts' shares today.[89]

In short, Defendant fails to support meaningfully why his full faith and credit argument requires dismissal. For the reasons explained, Defendant's motion to dismiss is denied.

### b. A Stay Is Not Warranted

Defendant also argues that this action should be stayed pending the resolution of the New York litigation. In support of his argument, Defendant relies primarily on this Court's decision in *Carvel v. Andreas Holdings., Corp.*[90] But as Plaintiffs ably explain, *Carvel* is materially distinguishable.[91]

As the Court described in *Carvel*, in a "minority of cases" a stay "would not undermine or defeat the statutory purposes" of a Section 225 proceeding.[92] This case does not fall within that minority.[93] Instead, this is precisely the kind of case where

---

[89] TT 31:12–32:1.

[90] 689 A.3d 375 (Del. Ch. 1995).

[91] *See* Pls.' OB at 39–41.

[92] *Carvel*, 689 A.3d at 378.

[93] Although in *Carvel* there was a dispute over who owned the underlying shares, there is no such dispute here. 689 A.3d at 378–78. The parties both agree that the Trusts own the shares. And, in *Carvel*, the parties expected an expedited answer from the foreign court to the question on which the stay of the Delaware proceeding turned. *Id.* at 376–78. But here, as explained above, even Defendant acknowledges that resolution of any appeals may take years, during which time Defendant would have this summary Section 225 proceeding stayed.

"prompt resolution of the corporate governance dispute [is] needed."[94]  If Defendant's appeals are granted and he is reinstated as co-trustee, he will be able to vote the Trusts' shares from that point.  But his reinstatement as co-trustee will not undo Benjamin's ability to vote the Trusts' shares as of the December 9 stockholders' meeting.  A stay of this proceeding pending the outcome of the New York litigation would needlessly paralyze the Company and run counter to the statutory purposes of Section 225.

## C.  Plaintiffs Are Entitled to Judgment on Counts I, II, & III

As already discussed, Section 225(a) allows a stockholder or director to seek a determination as to the validity of any election, appointment, removal, or resignation of any director or officer.[95]  Section 225(b) permits a stockholder or the corporation to seek a determination regarding a stockholder vote.[96]

In Count I, Plaintiffs seek a declaration that the December 9 stockholder vote for Iridium's Amended and Restated Bylaws was valid and that the bylaws became effective as of the time of the vote.

In Count II, Plaintiffs seek a declaration that the December 9 stockholder vote electing Jack, Benjamin, and Eliott to Iridium's board of directors was valid and

---

[94] *Id.* at 378.

[95] 8 *Del. C.* § 225(a).

[96] *Id.* § 225(b).

immediately effective and that Iridium's board of directors consists of Jack, Benjamin, and Eliott.

In Count III, Plaintiffs seek a declaration that the December 16 board meeting was properly noticed, and the resolutions passed at the meeting are valid and effective. Those resolutions include a resolution electing Benjamin as the Company's Corporate Secretary and Chairman of the Board and Eliott as the Company's CFO.[97] Defendant did not put forth any arguments that the meeting was improperly noticed or otherwise invalid.[98] Indeed, Defendant stipulated that Benjamin sent notice of the December 16 meeting to him,[99] and directed all of his trial arguments toward obtaining a dismissal or stay of this action.

The relief that Plaintiffs seek in Counts I, II, and III relates to the determination of a stockholder vote and the election of the Company's directors and officers. As already discussed at length, Benjamin was entitled to vote the Trusts' shares once the Surrogate's Court issued the letters of trusteeship. So the December

---

[97] *See* JX 27 at 2.

[98] *See Emerald P'rs v. Berlin*, 726 A.3d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived." (citation omitted)).

[99] *See* Pre-Trial Stip. ¶ 52 ("On December 11, 2024, Mr. Nazarian sent a notice and agenda for a special meeting of the board of directors of Iridium, to be held on December 16, 2024, via Zoom, along with an information request directed to the Company . . . ."); *see also* JX 25 (email from Benjamin to Jack attaching a notice of the December 16 board meeting); JX 26 (email from Defendant's counsel to Plaintiffs' counsel responding to the notice).

9 stockholder vote in favor of Iridium's Amended and Restated Bylaws was valid and the bylaws became effective at that time. The December 9 stockholder vote electing Jack, Benjamin, and Eliott to Iridium's board of directors was likewise valid and effective. Jack, Benjamin, and Eliott comprised, and continue to comprise, Iridium's board of directors. And the December 16 board of directors meeting was properly noticed and the resolutions passed at the meeting electing officers were also valid and effective. Accordingly, Plaintiffs are entitled to judgment on Counts I, II, and III, as described above.

**D.    Count IV and Plaintiffs' Request for Attorneys' Fees Are Outside the Scope of this Decision**

In a Section 225 proceeding "[t]he Court exercises jurisdiction 'only for the limited purpose of determining the corporation's *de jure* directors and officers.'"[100] In other words, "the scope of a Section 225 action is narrow and is 'limited to determining those issues that pertain to the validity of actions to elect or remove a director or officer'"[101] or the results of a stockholder vote under Section 225(b).[102] So a Section 225 action is an improper vehicle for trying purely collateral issues, issues of director

---

[100] *Hockessin Cmty. Ctr.*, 59 A.3d at 453 (quoting *Genger*, 26 A.3d at 200).

[101] *Chordia v. Lee*, 2024 WL 49850, at \*17 (Del. Ch. Jan. 4, 2024) (quoting *Genger*, 26 A.3d at 199).

[102] 8 *Del. C.* § 225(b).

misconduct or other breaches of fiduciary duty.[103]  A claim is "purely collateral" if

resolution of the claim does not help the Court decide the proper composition of the

board of directors or management team or the validity of a stockholder vote.[104]

> In Count IV, Plaintiffs seek a declaration that:
>
> (i) The January 13, 2025 special meeting of the board of directors was validly noticed;
> (ii) The December 11 Dividend was unauthorized and issued without board approval; and
> (iii) The resolution declaring the December 11 Dividend void passed at the January 13, 2025 special meeting of the board of directors and is valid and effective; and
> (iv) An order directing to Defendant to disgorge the $2,700,000 if Iridium assets he misappropriated in connection with the December 11 Dividend.

Count IV is purely collateral because resolution of the claim asserted does not bear

on either the proper composition of Iridium's board of directors or management team

or the validity of a stockholder vote.  So the relief sought in Count IV falls outside the

parameters of Section 225.

---

[103] *See Box v. Box*, 697 A.2d 395 (Del. 1997) ("To preserve an expedited remedy, a proceeding brought pursuant to section 225 is a summary proceeding, and the Court of Chancery has consistently limited section 225 trials to narrow issues.  Thus, a section 225 action is not to be used for trying purely collateral issues, issues of director misconduct or other breaches of duty.").

[104] *See Genger*, 26 A.3d at 199 ("In determining what claims are cognizable in a Section 225 action, the most important question that must be answered is whether the claims, if meritorious, would help the court decide the proper composition of the corporation's board or management team.  If not, then those claims are said to be collateral to the purpose of a Section 225 action and must be raised in a separate plenary action." (citation modified)).

Although a declaration that, since December 9, 2024, Iridium's board of directors consists of Jack, Benjamin, and Eliott sheds ample light on how this Court might ultimately rule on the allegations contained in Count IV, for present purposes, this count falls outside the scope of this narrow proceeding.

Plaintiffs also seek an award of attorneys' fees on account of Defendant's "egregious prelitigation conduct and bad faith defense of this litigation."[105] Plaintiffs may well be entitled to attorneys' fees, but because the relief sought does not bear on the specific question at hand—namely, the composition of Iridium's board and management team—I decline to address Plaintiffs' fee request in this post-trial decision. The Court will address Plaintiffs' request following a separate hearing and in a separate ruling.

In sum, this letter decision does not address Count IV of the complaint or Plaintiffs' request for attorneys' fees. The parties are encouraged to meet and confer to resolve Count IV, the attorneys' fee request, and any other outstanding issues.

### III. CONCLUSION

Plaintiffs have proved that Jack Sassouni, Benjamin Nazarian, and Eliott Sassouni are the lawful members of Iridium's board of directors. Plaintiffs are entitled to judgment on Counts I, II, and III. This decision does not address the claims asserted in Count IV or Plaintiffs' request for attorneys' fees. The parties are

---

[105] Pls.' OB at 49.

asked to submit a stipulated form of order implementing this decision within five business days.

Sincerely,

*/s/ Nathan A. Cook*

Vice Chancellor


NAC/sb

cc: All Counsel of Record, via *File and ServeXpress*